Chapman *vs.* Gray.

---

No. 58.—AMBROSE CHAPMAN, plaintiff in error, *vs.* JAMES M. GRAY, executor, &c. defendant.

[1.] A valid agreement may be made between husband and wife, through the intervention of a trustee, for an immediate separation, and for a separate allowance to the wife, for her support.

[2.] The agreement for a separation cannot be supported, unless the separation takes place immediately upon the execution of such agreement.   Of course it will be good where the separation has already taken place.

[3.] An agreement for a separation will be rescinded, if the parties afterwards cohabit or live together, as husband and wife, by mutual consent.

[4.] When the decisions of the Ecclesiastical Courts are in conflict with the adjudications of the Courts of Common Law and Chancery, in England, on a question of property, the latter are the highest authority, and must prevail in this State.

[5.] Where valid articles of separation, give to the wife the power to dispose of the property, at her death, settled for her provision for life, as she may choose to do, a *will* by her, while a *femme covert*, will be supported.

Motion to revoke probate of will.   Jones Superior Court.   Before Judge JOHNSON, April Term, 1850.

By articles of separation entered into between Ambrose Chapman and Grace Chapman, his wife, and James Smith, as trustee for the wife, dated 7th April, 1843, it was recited, that Chapman and his wife having " agreed to live separate and apart in future; and the said Ambrose Chapman, for the purpose of restoring to her, the said Grace Chapman, the property that she owned before the intermarriage, and, also, of his own being unincumbered in future on her account," conveyed to Smith, as trustee, twenty-two negroes, and other personal property, " for the separate use, benefit and behoof of her, the said Grace Chapman, during her natural life, and she is vested with the power to will and dispose of the same, after her death, as she may choose to do."

"And it is agreed, on the part of the said Grace Chapman, in consideration of the above provisions, that she is never to claim dower, in any event, or any other claim or interest in the estate or property belonging to said Ambrose Chapman; each one to be separately and distinctly divorced from bed and board, and not accountable, in future, for each other's debts or contracts; and for the true and faithful compliance with this agreement, the said parties—the said Ambrose, on his part, and said James Smith, as trustee for said Grace Chapman, aforesaid, and, also, the said Grace, on her part—have hereunto set their hands and seals."

In pursuance of the power given, on the 23d November, 1843, Grace Chapman executed a will, disposing of all the property mentioned in the articles of separation; which will was proven in common form, and admitted to record.

At the January Term, 1850, of the Inferior Court of Jones County, sitting as a Court of Ordinary, Ambrose Chapman, by counsel, moved to set aside the probate, on the ground that Grace Chapman was a married woman, and had no legal authority to make a will disposing of the property named; which motion was resisted by the executor, on the grounds—

1st. Because the said will was made by the assent of Ambrose Chapman.

2d. Because it disposes only of the sole and separate property of the decedent, which she had a right to do.

3d. Because the application to set aside the probate is too late—the application being after the probate thereof.

4th. Because, under the articles of separation, Grace Chapman had a right to make this will.

The Court of Ordinary refused the motion, and Ambrose Chapman appealed.

Upon the hearing of the appeal, it was agreed by the parties, in addition to the above facts, that Chapman and wife lived separate and apart, after the execution of the articles of separation.

The Judge presiding in the Superior Court, sustained the decision of the Court of Ordinary upon the *first, second* and *fourth* grounds taken in the response of the executor.

To which decision Chapman filed exceptions, and appealed to this Court.

A. H. CHAPPELL, for plaintiff in error.

R. V. Hardeman and Cone, for defendant,

R. V. Hardeman, for defendant, made the following points, and relied on the arthorities cited—

1st. That a wife, by the consent of her husband, may make a will of chattels.  2 *Black. Com.* 416.  1 *Roberts on Wills*, 23, '4. *Reeve's Domestic Relations*, 141, '6.  1 *Williams on Executors*, 41, '3, '5, '7, '8.  *Sheppard's Touchstone*, 402, '3.  2 *Kent's Com.* 170.

2d. That articles of separation between man and wife, are good and valid, both at Law and Equity.  *Reeve's Domestic Relations*, 90 *to* 97.  *Atherley*, 196.  *Clancy on Rights*, 397 *to* 420.

3d. That the property disposed of, was the separate property of Grace Chapman, and she had a right to dispose of her separate property, by will, without the consent of her husband. *Reeve's Domestic Relations*, 142, '5, '6, '8.  1 *Williams on Executors*, 46.  *Clancy on Rights*, 308, '9.

4th. That said will is good and valid, because made by virtue of a power contained in the articles of separation.  1 *Williams on Executors*, 44, '5, '6, '8.  2 *Kent*, 171.

Cone, for the defendant in error, submitted the following—

A deed of separation between husband and wife, and trustee, contemplating an immediate separation, and exonerating the husband from the debts and contracts of the wife, is a valid contract. *Clancy on Rights*, 399 *to* 405.  2 *Roper on Property*, 272.  *Guth vs. Guth*, 3 *Bro. C. C.* 504.  *Carson vs. Murray and others*, 3 *Paige's C. Rep.* 483.  *Atherley on Settlements*, 196, 199.  *Wagner vs. Ellis*, 7 *Barr*, 411.  *Munn & Ladbrooke vs. Mary Wilsmore*, 8 *Term Rep.* top *page*, 284.  *Huldon vs. Duey*, 3 *Barr*, 100. *Beetle vs. Wilson*, 14 *Ohio*, 257.  *Jee vs. Thurlow*, 2 ~~Barn. & Cress.~~ 547.  *Compton vs. Collinson*, 2 *Bro. C.* 298.

*By the Court.*—Lumpkin, J. delivering the opinion.

This case has been thoroughly discussed on both sides—few, if any, have been better argued at this bar ; and if the law is mis-

apprehended, the fault will not, certainly, be at the door of the learned counsel.

The question to be decided is this : may a valid agreement be made between husband and wife, through the intervention of a trustee, for an immediate separation, and for a settlement of property upon the wife, by way of separate allowance, with the power of testamentary disposition after her death?

The articles recite, that the object of the husband was to restore to the wife the property she owned before the intermarriage, and to have his own unincumbered, in future, on her account; and for this purpose, certain negroes and other property, therein mentioned, are conveyed to the trustee for the wife, during her life, and she is vested with the power to will and dispose of the same, after her death, as she may choose to do ; and in consideration of this provision, the wife agrees, that she will never claim dower in any event, or any other interest in the estate of her husband; it is farther stipulated, that, in future, they are not to be accountable for each other's debts or contracts ; and for the true and faithful compliance with the agreement, the husband, wife, and the trustee in behalf of the wife, sign and seal the instrument.

It is agreed, that from the time the articles were executed, that the parties lived separate and apart from each other, till the death of the wife, who disposed of the property settled upon her, by will—the probate of which the husband now resists, on the ground that the contract of separation was illegal and void.

[1.] Are these articles valid, and will they be recognized and enforced in this State ?

It is undoubtedly true, that the Ecclesiastical Courts of England consider a private separation as an illegal contract, implying a renunciation of stipulated duties, or dereliction of those mutual offices which the parties are not at liberty to desert—an assumption of a false character in both parties, contrary to the real *status personæ,* and to the obligations which both of them have contracted, in the sight of God and man, to live together, " till death doth them part ;" and on which the solemnities, both of civil society and of religion, have stamped a binding authority, from which the parties cannot release themselves, by any private act of their own, or for causes which the law itself has not pronounced to be sufficient, and sufficiently proven. *Shelford on Marriage*

*and Divorce*, 580.    *Mortimer vs. Mortimer*, 2 *Hagg. Cons. Rep.*
318.    *Warrender vs. Warrender*, 2 *Clark & Finn*, 561, '2.    *Nash
vs. Nash*, 1 *Hagg. Cons. R.* 142.

In *Smith vs. Smith*, *Consistory*, 1781, *cited* 2 *Hagg. Eccl. Rep.*
44, *n.* in a suit by the husband, for the restitution of conjugal
rights, the wife pleaded articles of separation, with a clause, that
the husband should not proceed in the Ecclesiastical Court.    This
plea, however, was overruled, and Dr. *Wynne* observed, " That
he believed it was the first time the question had come directly
before it, and was surprised that it should be brought forward."

In *Evans vs. Evans*, (1 *Hagg. Cons. Rep.* 36,) Lord *Stowell*,
with his usual elegance and felicity of thought and language, re-
marks, " The law has said that married persons shall not be *le-
gally* separated, upon the mere  disinclination of one or both, to
cohabit together.    The disinclination must be founded on reasons
which the law approves, and it is my duty to see whether those
reasons exist in the present case.    It must be carefully remem-
bered, that the general happiness of the married life is secured
by its indissolubility.    When people understand that they *must*
live together, except for a few reasons known to the law, they
learn to soften, by mutual  accommodation, that yoke which they
know they cannot shake off—they become good husbands and
good wives, from the necessity of remaining husbands and wives ;
for necessity is a powerful master in teaching the duties which it
imposes.    If it were once understood, that upon mutual disgust,
married persons might be legally separated, many couples who
now pass through the world with mutual comfort, with attention
to their common offspring, and to the moral order of civil society,
might have been, at this moment, living in a state of mutual un-
kindness—in a state of estrangement from their common off-
spring, and in a state of the most licentious and unreserved im-
morality.    In this case, as in many others, the happiness of some
individuals must be sacrificed to the greater and more general
good."

It must be conceded, also, that the highest authorities, both in
the Common Law and Equity Courts, have maintained, that
deeds of separation are at variance with the policy of the law ;
and the very Judges who have given effect to such deeds, have
declared, that they did it with reluctance, and would have paused
if the question had been new.    *Beard vs. Webb*, 2 *Bos. & Pul.*
VOL. VIII.  44

Chapman *vs.* Gray.

93.   *Lord St. John vs. Lady St. John,* 11  *Ves.* 526.   *Marquis of  Westmeath vs.  The Countess of  Westmeath, Jacobs'* R. 126.

Lord *Eldon,* in delivering his opinion in *Westmeath vs. Salis-bury,* (5 *Bligh. R. N. S.* 375,) where this subject is elaborately dis-cussed, thus expresses himself: "According to the law of this country, marriage is an indissoluble contract.  It can only be dis-solved by the Courts or the Legislature; and that contract once entered into, imposes upon the husband and wife, both with re-spect to themselves and with respect to their offspring, most im-portant and sacred duties—so important and so sacred, that it does seem a little astonishing that it ever should have happened, that it should be thought they could, by a mutual agreement be-tween themselves, destroy all the duties they owe to each other, and all the duties they owe to their offspring."

And yet this cannot be regarded an open question, if an unbro-ken series of decisions, both before and since our revolution, as well in the Courts of Common Law as of Equity, in England, and I might add in this country, are to be regarded as evidence of what the law is upon this subject.   For, it will be found, that while many  eminent Judges have expressed their regret at the existence of the rule, no Court, as yet, has ventured to over-turn it.

Sir *William Grant,* in *Norvall vs. Jacob,* (3 *Mer.* 268,) admitted, "that the  decisions were too numerous and uniform to be easily shaken."   And in *Ross vs. Willoughby,* (10 *Price,* 2,) where a general demurrer was put in to a bill praying an account of as-sets, and payment of the arrears of an annuity secured by cove-nant, in a deed of separation,  executed between a wife and her former husband, and the question as to the validity of such con-tracts being very fully  discussed, the demurrer was overruled— Chief Baron *Richards,* saying, " if we allow the demurrer, we shall overrule many solemn decisions.  I am  of opinion with Lords *Eldon* and *Loughborough,* that it would have been well if such contracts had not been held to be binding for any purpose; but the question is not what the law ought to be, but  what it is; and the opinions of Judges, however great and learned, are not to be put in competition with decisions determining the point and settling the law."

In *Jee vs. Thurlow,* (4 *Danl. & Ry.* 11.   2 *Barn. & Cress.* 547,) Justice *Bailey* said, "A system of jurisprudence so long acted

on, as that which has held deeds of separation, made with the approbation of trustees, and not prospective in their nature, as valid and binding instruments, cannot be overturned upon a vague notion that it is inconsistent with the public policy.   This Court, (*King's Bench*,) after the numerous authorities which have declared such deeds legal, is not competent even to inquire whether they are so or not."

Innumerable other cases might be cited from the English reports, equally applicable to establish the proposition, that an agreement between husband and wife, for immediate separation and a separate maintainance, through the medium of a trustee, have been deemed valid engagements, and their stipulations have been uniformly sustained and enforced against the husband.

The same doctrine prevails in the Courts of this country. Judge *Story* admits that the Courts have gone too far in upholding this doctrine to retrace their steps, even if it were as unquestionable and salutary in morals and policy to do so, as it has been thought to be.   *2 Stor. Eq. Jur.* §1427.

In *Bettle vs. Wilson*, (14 *Ohio R.* 257,) it was held, that articles of separation by husband and wife, through the medium of a trustee, for the separate support and maintainance of the wife, and where the separation actually takes place, in pursuance of the agreement, are not void, *as against public policy.*

In *Blaker vs. Cooper*, (7 *Serg. & Rawle*, 500,) the validity of these contracts is affirmed by the Supreme Court of Pennsylvania.

In *Carson vs. Murray and others*, (3 *Paige*, 483,) Chancellor *Walworth* said, that it had long since become the settled law of England, that a valid agreement for an immediate separation between a husband and wife, and for a separate allowance for her support, may be made through the medium of a trustee; and that, as many of the decisions which had gone the greatest length on this subject, took place previous to the revolution, they had been recognized in New York, as settling the law to that extent— citing *Baker vs. Barney*, 8 *Johns. R.* 73.   *Shelthar vs. Gregory*, 2 *Wend. R.* 422.   2 *Raithby's Index*, 386, *n.* 1.

In *Nichols vs. Palmer*, (5 *Day's R.* 47,) the question was distinctly presented to the Supreme Court of Connecticut, upon articles of separation, by which the husband bound himself to sup-

port the wife "forever hereafter," and the legality of such pro-
vision was fully sustained.

"It is objected to the declaration," says Justice *Baldwin*, "that
it exhibits a contract depending for its basis, on an agreement be-
tween husband and wife, to part and live separate.    It is contend-
ed, that such an agreement cannot be recognized as of any vali-
dity, because sound principles of policy forbid it, as *contra bonos
mores*, and that of course all contracts engrafted upon such a
stock, must also be void.    I admit the contract between husband
and wife, simply, cannot be enforced; yet where such agree-
ments are executed by the intervention of a trustee, I contend
that the contract with the trustee is not necessarily void.    The
doctrine of separate maintainance, by the aid of a trustee, is
found in the earliest records of English jurisprudence.    Such
contracts have, for ages, been protected and enforced in the Eng-
lish Courts of Chancery; and when collaterally brought in ques-
tion, in Courts of Law, they have been recognized as the basis of
legal adjudications."

We deem it unnecessary to pursue this investigation any far-
ther.    To vindicate the policy of the law, is no part of the office
of Courts.    If it were, we should find it difficult, we confess, to
show that the law, in this respect, has acted with that true wis-
dom and real humanity, that regards the general interests of man-
kind.

For myself, I am inclined to believe, that policy and morality,
if not religion itself, stand opposed to these voluntary separa-
tions; yet, finding as I do, that they have received the uniform
sanction of the British tribunals, from the earliest period of their
jurisprudence, and are a part of the ancient Common Law; that
the doctrine was imported with our ancestors to this country, who
have been in the habit of making similar arrangements, from the
earliest period of our history, so far as we have any authentic in-
formation upon this subject; I feel that I am not at liberty to
act upon my own opinion in the matter, but that the rule is bind-
ing upon the Judiciary, as a part of the Common Law of the
land.    It is for the Legislature to interpose, if they see fit to do
so.    If the late law which has been promulgated upon the sub-
ject of divorces, however, is to be considered as a true exponent
of public opinion—and I doubt not it is—we need not expect any
interposition from that quarter.    Perhaps, if any individual case

would justify the application of such a principle, it would be the present.

Nay, more : it may be that the state of society in Great Britain and in this country, would justify a totally different policy respecting this principle. Here, a married woman very seldom abandons the most sacred of her duties, unless driven to it by necessity. Satisfied with simply filling the place that was intended for woman by nature, she will submit to the cruelty of her husband, notwithstanding the most ample cause may exist for leaving him. Practically, then, these settlements work beneficially here, for the weaker and more helpless party.

As we are not willing, however, to extend this doctrine beyond adjudged cases, we would state, that according to these, a deed of separation does not relieve the wife from any of the ordinary disabilities of coverture. *Marshall vs. Rutton,* 8 *T. R.* 545. Again, a deed of separation entered into by the husband and wife alone, without the intervention of a trustee, is void. *Legard vs. Johnson,* 3 *Ves.* 352, 359, 361. *Westmeath vs. Salisbury,* 5 *Bligh.* (*N. S.*) 375.

[2.] A deed containing a covenant for *future* separation, cannot be enforced. *Durant vs. Titley,* 7 *Price R.* 577. *Hindley vs. Westmeath,* 6 *B. & Cress,* 200.

[3.] In case of a deed for an immediate separation, if the parties come together again, there is an end to it, both with respect to any future, as well as to the past separation. *Fletcher vs. Fletcher,* 2 *Cox R.* 99. 3 *Bro. Ch. R.* 619. *Bateman vs. Countess of Ross,* 1 *Dow. R.* 235.

[4.] It has been insisted, that as this case originated in the Court of Ordinary, and would fall properly under the jurisdiction of the Ecclesiastical Courts of England, it should be adjudged by the rule of that Court in relation to these averments. It will be observed, however, that that rule, as there administered, is based upon the jurisdiction which the Ecclesiastical Court possesses, to restore the parties to their marital rights, and to compel the performance of their conjugal duties. Not only is the Court of *Ordinary* here destitute of any such power, but we much doubt whether it exists any where else. In New York, and other States of the Union, where, as here, the Common Law has been adopted, this question has been determined by the doctrine maintained in the Common Law and Chancery Courts,

and not by the rule of the Ecclesiastical Courts. Besides, we have, in this State, a legislative expression of opinion, if we were in doubt as to what law should regulate our decision. As early as 1789, it was enacted, that should any case arise, which is not expressly provided for by the Act respecting intestates' estates, the same shall be referred to, and be determined by, the *Common Law*, as it had stood since the first settlement of the province. *Prince*, 225. Our forefathers never failed, on all suitable occasions, to manifest their preference for the Common Law proper of the mother country, over the Canon and Civil Law.

[5.] It is further argued, that although these articles may be good, as to the provision for life, made for the wife, inasmuch as the husband was bound to support her any how, that still the power of appointment, or of testamentary disposition, is void.

We do not see very clearly upon what principle this contract can be sub-divided. One of the main inducements for upholding these agreements is, that by them, the parties may adjust, in a manner most convenient to themselves, the terms of separate maintenance, which the law makes it obligatory upon the husband to allow. Here, the stipulation for this purpose is an entirety, and such as the parties themselves were satisfied with—due regard being had to their condition and circumstances in life. The wife was content, perhaps, to take less, *in presenti*, with this power of final and future disposition. She could certainly afford to do so. Her present enjoyment might very much depend upon this testamentary right. A wife may, by the consent of her husband, make a will of chattels; and this consent is here founded upon an agreement which the law deems valid.

In the case referred to in Ohio, the husband, for the maintenance of the wife, was to allow her one-half of his personal property, and $1000 in money. He transferred and delivered over to the trustee, one-half of the personal property; also, sundry evidences of debt, amounting to about $300, and for the balance of the one thousand dollars, gave two notes, for $350 each. The wife died before the last note fell due, and the husband resisted its payment, on the ground, that the property which he turned over, together with the cash collected on the papers, was more than sufficient for the use and support of the wife, during the time that she lived, and that the consideration of the note had wholly failed.

But the Court say, "This contract is not a contract to pay, from time to time, as the payments may be wanted for the sustenance of the wife. Had the wife lived fifty years, the husband was under no obligation to pay more; and if she lived but one year, shall he pay less? We think not. The contract was obligatory, and he must abide by it. This is a contract between individuals, who acquire rights as against each other, which the law will enforce, by compelling each to do what they have agreed to do."

We consider the case of *Compton vs. Allinson*, 1 *H. Black. R.* 334, as a direct authority upon this point. There, a married woman was living apart from her husband, under articles of separation, by which he covenanted that she should enjoy, to her own use, all such estates, both real and personal, as should come to her during the coverture, and that he would join in the necessary conveyances to limit them to such uses *as she should appoint.* This stipulation was held to be good.

If these views be correct, it cannot be readily perceived how any objection can exist to the provision, in the articles conferring upon Mrs. Chapman the power of appointment over this property.

Our conclusion, then, is, that there is no error in the ruling of the Circuit Court, and that the judgment must be affirmed.