PILLOW VS. WADE & WIFE et al.

1. DOWER: *Release to husband void.*
   A married woman cannot release dower in favor of her husband; she can only release it by joining with the husband in a deed to a third person. •

2. HUSBAND AND WIFE:
   Are incapable of contracting with each other.

3. ————: *Construction of a deed of settlement.*
   A conveyance by a husband to a trustee upon the following trust, viz: " In trust, nevertheless, for the use and benefit of said (the grantor's wife) as a separate estate and property for her support," clearly indicates that the object of the settlement was the support and maintenance of the wife during her life; and it makes no difference that the conveyance was to the trustee in fee, the trust terminated when the purpose for which it was created was accomplished, and the estate reverted to the grantor.

4. PRACTICE IN CHANCERY: *Decree, etc.*
   Upon the dismissal of a complaint in equity to cancel a deed executed by the plaintiff, and alleged to cast a cloud on his title, on the ground that the deed appears upon its face to be inoperative, the decree should, where the deed contains peculiar provisions and recitals, set out the ground of the dismissal.

APPEAL from *Lee* Circuit Court in Chancery.

Hon. J. N. CYPERT, Circuit Judge.

*Rose,* for appellant.

*Tappan & Hornor, contra.*

HARRISON, J.:

This was a suit in equity by Gideon J. Pillow against D. F. Wade and Anna P. Wade, his wife, H. M. Williams and Sallie P. Williams, his wife, John D. Mitchell and Narcissa P. Mitchell, his wife, and Jerome B. Pillow.

The complaint alleges, that the plaintiff being, at the close of the civil war, much in debt, and wishing to use his lands, in settlement with his creditors and discharge of his liabilities, owning at the time five plantations in Phillips County, and three large unimproved tracts in St. Francis, to effect such purpose, deemed it advisable to procure a release of the dower of his wife, Mary

E. Pillow, but feeling that it would not be just or prudent to ask such release, without an equivalent consideration, he proposed, to which she assented, to dissever, by release, her dower in several plantations and tracts, and to consolidate the same in one body; and with that view, he had her dower in all the several plantations and tracts valued by two disinterested and competent persons, who estimated the whole at $60,000; and thereafter, on the 15th day of July, 1865, his wife, by deed, released to him her dower in all, and he, at the same time, conveyed to the defendant, Jerome B. Pillow, his plantation known as the Mound place, and which is in Lee County, now, in trust for her, and as a separate estate and property, for her support, both of which deeds were duly acknowledged and recorded.

That the sole object of the conveyance was to secure to his wife, in case she should survive him, an estate in the Mound place, equal in value to the dower in the lands she released; but that, through mistake or inadvertence, the deed was so drawn as to acknowledge an indebtedness to her of $60,000, and to make the same a charge upon the plantation.

That Mrs. Pillow died in 1869, leaving surviving her the following children, her heirs at law: Robert G. Pillow, Gertrude S. Pillow, Mary Amanda Brown, intermarried with Thomas J. Brown, Lizzie P. Johnson, intermarried with Wilber F. Johnson, Alice P. Fargason, intermarried with D. B. Fargason, Anna P. Wade, intermarried with D. F. Wade, Sallie P. Williams, intermarried with H. M. Williams, and Narcissa P. Mitchell, intermarried with John D. Mitchell; and that he had administered upon her estate in Arkansas.

That when the said deed of trust was made, the plaintiff and Mrs. Pillow were residents of the State of Tennessee, and continued to be so until her death, and that the plantation had remained, and was still, in his possession.

That Robert G. Pillow, Gertrude S. Pillow, Mary Amanda Brown, Lizzie P. Johnson and Alice P. Fargason disclaimed, as heirs of their mother, any interest in the plantation, and, with the said Wilber F. Johnson and D. P. Fargason, had released to the plaintiff whatever estate or interest they might claim under the deed of trust, but that Anna P. Wade and her husband, Sallie P. Williams and her husband, and Narcissa P. Mitchell and her husband, assert and claim that the transaction was a purchase by the plaintiff of his wife's dower, and that a debt of $60,000 therefor was secured to her on the plantation by the deed of trust.

And that the said deed of trust, though the estate conveyed is terminated, is a cloud upon the plaintiff's title, and it prays that the deed may be canceled and the cloud upon his title removed.

Copies of both the deed of trust and the release of dower were filed as exhibits with and made part of the complaint.

The release, after reciting that the value of the dower in all the plantations and lands, naming them, had been ascertained to be $60,000, and that the payment of that sum had been secured to her by a mortgage on the Mound place, proceeds thus: "Now, therefore, I, Mary E. Pillow, wife of the said Gid. J. Pillow, do hereby and in consideration of the sum of money above named and secured to be paid, release and relinquish to my said husband, the said Gid. J. Pillow, his heirs and assigns, all my right of dower in and to his above named eight tracts of land situated in Phillips and St. Francis counties, and the State of Arkansas."

The deed of trust commences thus: "This indentuure of mortgage made and entered into this 15th day of July, 1865, between," etc., and, after reciting that his wife had released her dower in his several plantations and tracts of land, to enable him to pay his debts, and that the value of the same had been

estimated at $60,000, proceeds as follows: "Now, therefore, I, the said Gid. J. Pillow, in consideration of said several relinquishments made by my wife aforesaid, do hereby acknowledge myself indebted to my said wife in the sum of $60,000 to secure the payment of which said sum I do hereby bargain, sell, convey and confirm to the said Jerome B. Pillow, in trust for my said wife, the following tract of land, viz.: My Mound plantation (more particularly describing it) situated in Phillips County, Arkansas; to have and to hold said tracts of land and bargained premises, to the said Jerome B. Pillow, his heirs and assigns forever, but in trust, nevertheless, for the use and benefit of said Mary E. Pillow, as a separate estate and property for her support.

"The said Gid. J. Pillow binds himself, his heirs, executors and administrators to warrant and defend the right of said bargained premises to the said Jerome B. Pillow, his heirs and assigns, in trust, etc., but to secure payment to the said Mary E. Pillow of the sum of $60,000 aforesaid. Upon payment of said sum, this obligation to be null and void, otherwise to remain in full force and effect."

Wade and wife, Williams and wife, and Mitchell and wife, demurred to the complaint for the want of equity. The court sustained the demurrer, and dismissed the complaint, and the plaintiff appealed.

The attempted release of her dower by Mrs. Pillow was a nullity. A married woman can relinquish dower, only, by joining with her husband in a deed of conveyance to a third person. Gantt's Digest, sec. 839; *Witter* v. *Biscoe,* 13 Ark., 423; *Stidham* v. *Matthews,* 29 ib., 658; *Countz* v. *Markling,* 30 ib., 18; *Carson* v. *Murray,* 3 Paige 503; *Rowe* v. *Hamilton,* 3 Greenl., 63; *Shaw* v. *Reese,* 14 Maine, 432.

But not for that reason only, could there be no liability of the plaintiff to pay Mrs. Pillow the sum mentioned in the deed of

trust. As husband and wife they were incapable of contracting with each other. It is apparent, therefore, that no lien for the payment of a debt was created by the deed of trust on the plantation, and that so much of the deed as related to a debt was nugatory and without effect.

It is not, however, insisted here by the appellees that there was a lien or that any such debt existed, but they contend that the plaintiff, by the deed, made a voluntary settlement of the plantation on Mrs. Pillow and her heirs.

Passing unnoticed the averment in the complaint that the sole object of the conveyance was to secure to Mrs. Pillow, for her life, in case she survived the plaintiff, an estate in the plantation equal in value to the dower she attempted to relinquish, which the demurrer admits, we will look to the language of the deed declaring the trust, upon which the trust was made, which is as follows: "In trust, nevertheless, for the use and benefit of said Mary E. Pillow, as a separate estate and property for her support."

The terms here used, very clearly indicate that the object of the settlement was the support and maintenance of Mrs. Pillow, during her life, for, if an unlimited estate was intended, why were her words "for her support" added? To give these words any meaning at all, they must be considered in a restrictive view, and as limiting the trust to her life.

It can make no difference that the conveyance was to the trustee in fee. The trust terminated when the purpose for which it was created was accomplished. 2 Perry on Trusts, sec. 920.

"The general rule of law is," said Baron Parke in *Barker* v. *Greenwood*, 4 Mees. & W., 429, "that whenever there is a limitation to trustees, although with words of inheritance, the trustees are to take only so much of the legal estate as the purposes of

the trust required." *Jackson* v. *Myers*, 3 John., 396; *Ellis* v. *Fisher*, 3 Sneed, 231; *Badgett* v. *Keating and wife, ante.*

The trust having terminated upon the death of Mrs. Pillow, the estate reverted to the plaintiff, and the deed is now inoperative and void. But although no title in her heirs is shown upon the face of the deed, and it casts no cloud upon the plaintiff's title, yet we think the decree of the court below, because of the peculiar provisions and recitals in the deed, should have expressed the principles upon which the complaint was dismissed.

Chancellor Kent, in *Hamilton* v. *Cummings*, 1 John., Ch. R., 517, remarked: "I am inclined to think that the weight of authority, and the reason of the thing are equally in favor of the jurisdiction of the court, whether the instrument is or is not void at law, and whether it be void from matter appearing on its face, or from proof taken in the cause, and that these assumed distinctions are not well founded," and, after reviewing the authorities, he continued: "But while I assert the authority of the court to sustain such bills, I am not to be understood as encouraging applications, where the fitness of the exercise of the power of the court is not pretty strongly displayed. Perhaps the cases may all be reconciled on the general principle, that the exercise of this power is to be regulated by sound discretion, as the circumstances of the individual case may dictate; and that the resort to equity, to be sustained, must be expedient, either because the instrument is liable to abuse from its negotiable nature, or because the defense, not arising on its face, may be difficult or uncertain at law, or from some other special circumstances peculiar to the case, and rendering a resort here highly proper, and clear of all suspicion of any design to promote expense or litigation. If, however, the defect appears on the bond, itself, the interference of this court will still depend on a question of expediency, and not on a question of jurisdiction."

These remarks of the learned chancellor were quoted by Chief Justice Marshall, in *Piersole* v. *Elliott*, 6 Pet., 95, but without any expression of approval, and he said much contrariety of opinion prevailed on the question.

In that case, *Piersole* v. *Elliott*, the deed had been, by the court, in a previous suit between the parties, declared void on its face; it therefore deemed it expedient to so modify the decree of the Circuit Court dismissing the bill, as to show that it was dismissed because the deed was void at law for matter apparent on its face.

The decree of the court below is affirmed, but will be so modified as to show that the complaint was dismissed, because the deed, when properly construed, shows upon its face that the trust, thereby created, was only for the life of Mrs. Pillow, and it is now inoperative and void.