BOWERS *v.* HUTCHINSON.

Opinion delivered October 14, 1899.

1. DOWER—RELEASE.—Under the statutes of this state a married woman can relinquish dower only by joining with her husband in a deed of conveyance to a third person. (Page 22.)

2. HUSBAND AND WIFE—CONTRACT BETWEEN—ENFORCEMENT.—In case of a contract between husband and wife made without the interposition of a trustee, if either party has received the full benefit of the contract, and it is otherwise valid, it will be enforced in equity. (Page 25.)

3. PLEADING—DEFECT OF FORM—REMEDY.—An answer to a petition by a widow for her share in her husband's personalty alleged that she entered into an agreement of separation with her husband whereby she agreed to release all her right to share in his estate in consideration of provisions for her which "were fair and just according to his estate in every respect." *Held*, that the answer was defective in form, as it should have stated the facts necessary to show that the agreement was based upon a sufficient consideration, was fair and equal, reasonable in

its terms, and untainted by fraud or coercion, and that the separation had actually taken place when the agreement was entered into, or immediately followed. *Held,* also that this defect in pleading should be reached by motion, not by demurrer. (Page 25.)

4.  DEED OF SEPARATION—EFFECT.—The fact that a deed of separation was invalid as a relinquishment by the wife of her right of dower in her husband's lands does not render it inoperative as a release of her right to share in his personal property. (Page 26.)

Appeal from Arkansas Circuit Court.

JAMES S. THOMAS, Judge.

*P. C. Dooley,* for appellants.

Appellee, having enjoyed all the benefits of the contract, should not be suffered to repudiate it. 37 Am. Dec. 438. Contracts of separation are at the present time enforced in both England and America, without the intervention of a trustee. Macq. Hus. & Wife, 324, 329; Schouler, Dom. Rel. 471, 473; 3 Vesey, 352; Bright, Hus. & Wife, 306; Schoul. M. & D. 474; 37 Mich. 563; 9 Wall. 743; Bish. M. & D. § 1266; 5 H. L. Cas. 59; 113 Mass. 255; 41 Barb. 92; Tiff. Dom. Rel. 168, 169, 170; 24 Atl. 926; Bish. Cont. § 469, 490; Bish. M. D. & Sep. §§ 1264, 1265, 1278, 1286; 12 Ch. Div. 605; 18 Ch. Div. 670; 113 Mass. 255; 3 Metc. 503; 18 Am. Rep. 476; 54 Pa. St. 110; S. C. 42 Am. Dec. 271; 8 Ga. 341; 3 Pa. St. 100; 37 Mich. 563; 35 Mich. 110; 107 Pa. St. 18; 89 Am. Dec. 172; 113 Mass. 257; 22 Barb. 97; 41 Barb. 92; 37 N. Y. 621; 8 W. & S. 102; 1 Blackf. 97; 14 Ohio, 257; 7 Johns. 57; 34 Mich. 342; 15 Ala. 311: 1 B. Mon. 282; 9 Humph. 477; 35 Miss. 638; 17 Mo. 564; 7 Price, 577; 11 Ves. 526; 2 Brown, Ch. 377; 3 Meriv. 266; 2 B. & C. 547; 4 D. & R. 11; 7 Serg. & R. 500; 3 Pa. St. 100; 35 Pa. St. 357; 5 Day, 47; 8 Johns, 73; 2 Wend. 422; 3 Paige, 483; 8 Ga. 341; 9 Cal. 494; 3 Met. 503; 9 Wall. 743; 10 Pet. 583; 16 Oh. St. 527; 14 Ind. 505; 15 Mich. 447; 44 N. E. 20; 4 De G., F. & J. 221; 113 Mass. 255; 77 Ill. 633; 54 Wis. 554; 34 Tex. 536; 8 Bush, 262; 25 Iowa, 350; 4 Bush, 453; 22 Barb. 97; 14 Ohio, 257; 13 Rich. (S. Car.) 157; 41 Barb. 92; 1 Blackf. 97; 4 Greene, 126; 3 Metc. 503; 39 N. Y, 621; 1 Phila. 561; 8 W. & S. 102; 3 Pa. St. 100; 10 Oh. St. 247; 35

Pa St 357. As to powers and rights of married women in this state, see: 47 Ark. 175; 52 Ark. 234; 47 Ark. 235; 44 Ark. 154; 45 Ark. 111; 47 Ark. 111; 51 Ark. 235; 62 Ark. 31; Const. 1874, art. 9, § 7; Sand. & H. Dig. § 4945; 47 Ark. 175; 60 Ark. 70; 56 Ark. 243; 46 Ark. 542; 55 Ark. 85; 55 Ark. 116; 52 Ark. 234; 51 Ark. 390; 1 Kent, 167; 89 Am. Dec. 547; Big. Est. 278; 125 Mass. 25; 43 Am. Dec. 427; 3 Neb. 344; 58 Am. Dec. 112; 6 How. 238; 1 Story, Eq. 385; 1 Pom Eq. 814. A married woman is estopped from denying her acts, or the consequences thereof, the same as a *femme sole.* 50 Mich. 189; 2 Bish. Mar. Wom. § 490; Big. Est. 513, 488; 30 Ala. 382; 21 Pa. St. 436; 2 Pom. Eq. § 698; 94 U. S. 22; 50 Ark. 42; 10 S. E. 95; 52 Fed. 631; 50 Ark. 42.

*M. J. Manning* and *J. P. Lee,* for Appellee.

A release of dower to the husband is a nullity. 30 Ark. 17; 31 Ark. 678; 13 Ark. 423; 53 Ark. 281; 3 Paige, 503; 14 Me. 432; 60 Ark. 474; 86 Ill. 547; 76 Tex. 533; 85 Ala. 342; 101 Ill. 242; 102 Ind. 173; 40 Md. 387; 38 Ind. 221; 25 N. Y. 328; 32 N. Y. 423; 14 Barb. 531; 56 Ark. 297; 26 N. E. 128; 60 Ark. 174; 2 Scrib. Dow. 303-313, 288; 3 N. E. 19. A widow can not convey her dower before it is assigned and allotted to her. 21 Ark. 62; 21 Ark. 347; 31 Ark. 334; 3 N. E. 19. The husband was already legally bound to pay the sum advanced to the wife. Hence it was not a valid consideration for the contract or conveyance. 52 Ark. 174. Estoppel does not operate on a matter as to which the party could not contract. 47 Ark. 354; 37 Ark. 555; *Id.* 304; 15 Fed. 707. The transaction, by reason of the confidential and fiduciary relations existing between the parties, is presumably invalid in equity. 2 Pom. Eq. §§ 955, 963.

*Benj. J. Gifford,* for Appellee.

The former doctrine of the courts did not favor such agreements as the one at bar. Schouler, Dom. Rel. 190. The later rule is that if there was a fair division of property, and the wife has all the court would have awarded her, the settlement will not be disturbed. Bish. Sep. 1280; Schoul, Hus.

& Wife, 329; 135 Ill. 457. The presumption is against the validity of such agreements, and the one relying upon such a contract of the wife must show that she had authority to do so, and that the husband acted in good faith. 58 Mich. 1; 75 N. Y. 91; 92 Pa. St. 267; 71 N. Y. 154; 57 Pa. St. 57; 9 How. 55; Kerr, Fraud and Mist. 400; 92 Pa. St. 248; 86 Pa. St. 512; Story, Eq. Jur. § 308; Bisph. Eq. § 231; Schouler, Hus. & Wife, 473; Atherly, Mar. Sett. 162; Tiff. Dom. Rel. 171; Bish. Mar. and Div. 474; Macq., H. and W. 300; Sch. Post Nup. Agreem. 190; 112 Ill. 229; 40 Mich. 473; Schouler, Dom. Rel. 190, 191; Bish. M. and D. 1280: 144 Ill. 436; 104 Ill. 122. While all post nuptial agreements between husband and wife are void in law, those which are not inequitable may be enforced in equity. 9 Wall. 743; 45 Ala. 264; 113 Mass. 255; 54 Pa. St. 110; 3 Pa. St. 100; 1 Blackf. 97; 14 Ind. 505; 145 Ind. 59; 37 Mich. 563; 37 Mich. 326; 135 Ill. 457; 144 Ill. 436.

BATTLE, J. On the 7th day of June, 1876, John H. Hutchinson and Jennie M. Martindale were married. On the 17th day of January, 1897, John H. Hutchinson departed this life intestate, at his late residence in Arkansas county, in this state, leaving Jennie M. Hutchinson, his widow, surviving, but no children. He died seized and possessed of real and personal property. On the 19th of January, 1897, Edward Bowers was duly appointed his administrator; and on the 14th of April, 1897, Jennie M. Hutchinson, his widow, applied to the Arkansas probate court for an assignment of her dower in his estate. The administrator and heirs of the deceased answered, and pleaded in bar of her right to dower a deed, which was duly executed and acknowledged by the petitioner and the deceased in his lifetime, and is in the words and figures following:

"This deed of separation, or articles of agreement, made, entered into, and executed at DeWitt, in the county of Arkansas, this 13th day of September, A. D., 1882, by and between John H. Hutchinson, M. D., as party of the first part, and Mrs. Jennie M. Hutchinson, party hereto of the second part, witnesseth:

"That said parties, with their mutual consent and by agreement, were lawfully joined in wedlock, on the 7th day of June, 1876, at the city of Memphis, Tennessee, and then came to the residence and home of said first party in said county of Arkansas, where they have continued to reside as husband and wife, and whereas, the said first party at the time of such marriage engaged in the practice of medicine in said county in Arkansas, and is still engaged in such practice, from which, as well as from the business of stock raising and farming, he has supported and maintained his said wife and himself comfortably, and has at all times furnished her with all things and articles necessary for her health, comfort, enjoyment and proper maintenance, but the said second party being dissatisfied with and unwilling to continue to reside in said county of Arkansas, and being desirous of residing with a relative at————————; and whereas, the said first party is not in a condition to abandon his said home, practice and business already acquired and established in said county of Arkansas, and remove to and locate in some other state or kingdom; and whereas, said first party is unwilling to exercise his authority as a husband by requiring his wife, said second party, to permanently reside at his said home and domicile in said county of Arkansas, contrary to her desire and expressed wish, therefore said parties mutually covenant and agree to and with each other as follows:

"The said John H. Hutchinson covenants with said Mrs. Jennie M. Hutchinson, (who was prior to said marriage Miss Jennie M. Martindale) that she shall have full liberty and authority, and he hereby agrees that she may from this date have full liberty and authority, to reside where she pleases and desires, away from and free from the direction and control of said first party as her said husband, with the full and distinct understanding that she may select the place of residence, and change the same from time to time as freely as she could do as a single woman.

"The said first party, in consideration of the premises, and of the several covenants of said second party hereinafter expressed, hereby further agrees, promises and covenants with said second party to pay her, this day, the sum of $50 cash in

hand, and to pay her the further sum of three hundred dollars
on or before the first day of January, 1883, and also the sum of
one hundred dollars on or before the first day of January, 1884,
and also the sum of one hundred dollars on or before the first day
of January, 1885, and also the sum of one hundred dollars on
or before the first day of January, 1886, which said sums are not
to bear any rate of interest, but are to be paid, as stated, to
said second party, or her designated agent, at the town of De
Witt, in said county of Arkansas, on the first days of January,
1883, 1884, 1885 and 1886, respectively; and said cash and said
payments to be made as aforesaid are in full satisfaction of all
the claims upon, or right of support and maintenance by, said
first party of the second part, as well as in release and satis-
faction of whatever rights or claims or interest, whether of
dower or otherwise, which she has acquired, or might acquire,
in and to the estate and property of said first party by virtue of
their relations, situations, and position toward each other by
virtue of their said marriage.

"The said first party further covenants that he will not
attempt to control or set up any claim, interest in, or title to
such estate and property as the said second party may herein-
after acquire, but agrees and covenants that she may sell and
dispose of the same, or bequeath it, or any part thereof, when
and to whom she chooses, without let, hindrance, declaration
or control from said first party.

"The said second party, Mrs. Jennie M. Hutchinson, in
consideration of the premises and covenants of said first party
and of said sum of fifty dollars to me this day in hand paid by
said first party, at and before the execution of this deed (the
receipt whereof I hereby acknowledge), I, said second party,
do agree, promise and covenant with the said first party, his
heirs and assigns, as follows: That I will not at any future
time set up any claim to or interest in the estate, real, per-
sonal and mixed, which is now owned, or may be hereafter ac-
quired, by said first party, or of which he may be seized and
possessed, or be in any manner entitled to, at the time of his
death, herein fully intending to relinquish, release, remise and
forever quitclaim unto said first party, his heirs and assigns,

any or either of them, as occasion may require, all claims, interest, right, demand, or possibility of dower that might or could hereinafter be allotted and assigned to her by virtue of her said intermarriage with said first party, and she hereby expressly relinquishes, releases, remises, and forever quitclaims, and hereby conveys to said first party, his heirs and assigns, all my right, claim, interest, or title in and to the estate of my said husband, and covenant that I will not at any time or circumstances set up any claim whatever to said estate, or any part or parcel thereof. I further promise and covenant with said first party that I will and do accept said sum of four hundred and fifty dollars, paid and to be paid as aforesaid, in full satfaction and payment of all claims to support and maintenance by, or dower out of the estate of, said John H. Hutchinson, and I further covenant with him that I will not at any time hereinafter contract in his name, or purchase any kind of property with the expectation that he shall pay for the same, or be liable in any manner whatsoever for any support and maintenance, or for any debt that I may contract, or anything I may purchase.

"The said parties hereby agree to separate and live apart on the terms and conditions aforesaid.

"In witness whereof, we have hereto set our hands and seals at DeWitt aforesaid, the date first herein written.

"J. H. HUTCHINSON, (Seal.)

"JENNIE M. HUTCHINSON, (Seal.)

"Attest.

  "J. M. PINNELL."

They alleged that John H. and Jennie M. Hutchinson conformed to and carried into effect these articles of separation until the death of the husband.

The petitioner demurred to the answers of the defendants, and the court sustained her demurrer, and ordered dower to be assigned; and the defendants appealed to the Arkansas circuit court, and in the circuit court they filed an amendment to their answers in the following words and figures:

"That at and before the execution of the deed of separation set out in their answer, filed on the 20th day of April, 1897, the said Jennie M. Hutchinson was dissatisfied with the

home provided for her by her husband, in Arkansas county, and had decided to no longer live there, but would depart to her relations in a distant state, and would no longer live with him, of which decision and determination she notified her said husband, and, having so determined to separate from him, and no longer sustain the relations of wife to him, and he, being a man of high social and personal and professional standing in the community, to prevent the scandal and humiliation incident to a proceeding in a court of justice to procure a separation and proper settlement, entered into and executed the foregoing articles of separation, which were sought by her and executed voluntarily and understandingly by her. That their separation had actually been decided upon, and had taken place before the execution of said deed, and that she left his house immediately upon its execution, and they have lived separate and apart ever afterwards. That he performed every obligation imposed on him by said agreement, and paid to her the sums of money therein mentioned at the time and place agreed upon, and no dissatisfaction was ever expressed by her to said deed as long as he lived. That said deed of separation and of transfer was faithfully adhered to and respected by both, so long as he lived. That the provisions made for her in said deed were fair and just according to his estate in every respect, and she received and accepted the full benefits of said agreement, and abided by it for sixteen years, living apart from her said husband, and carrying on a separate business for herself, and she is now estopped from denying its validity, or doing any act inconsistent therewith, or with her conduct for sixteen years. Wherefore they ask that her petition for assignment of dower in the estate of said John H. Hutchinson be dismissed."

Mrs. Hutchinson demurred to the answer as amended; and the circuit court sustained her demurrer, and remanded the cause to the probate court, with directions to set apart to the widow dower in the estate of her deceased husband; and the defendants appealed.

The deed which constituted the defense in this action was without effect as a relinquishment of dower in real estate. The statutes of this state provide that a widow shall have dower in

"all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage, unless the same shall have been relinquished in legal form." To relinquish her dower in any land of her husband the statutes require her to join in the conveyance thereof, and to voluntarily appear before a proper court or officer, and, in the absence of her husband, declare that she had of her own free will signed the relinquishment of dower for the purposes contained and set forth in the conveyance, without compulsion or undue influence of her husband. Under these statutes this court has repeatedly held that "a married woman can relinquish dower only by joining with her husband in a deed of conveyance to a third person." *Pillow* v. *Wade*, 31 Ark. 678; *Wetter* v. *Biscoe*, 13 Ark. 423; *Stidham* v. *Matthews*, 29 Ark. 658; *Countz* v. *Markling*, 30 Ark. 17; *Smith* v. *Howell*, 53 Ark. 281.

In *Pillow* v. *Wade*, 31 Ark. 678, this court held that a release of dower by a wife to her husband was a nullity, and cited *Carson* v. *Murray*, 3 Paige, 503, to sustain its ruling. In that case (*Carson* v. *Murray*) a husband and wife agreed to separate, and executed articles of separation, by which the husband agreed to pay to the wife an annuity of $125 per annum during her life, as alimony, and the wife agreed to release her right to dower in his estate. The court sustained the articles as to the annuity, but held that the wife could not relinquish her dower in the real estate of her husband by executing a release to him, or in any other way than by joining with him in a conveyance to a third person.

The validity of the deed executed by Hutchinson and his wife may be attacked in another respect. One of the stipulations of the deed is an agreement of the parties to live separately. At one time such agreements were held to be against public policy and void, because in derogation of the relation created by marriage. In England the law, in this respect, has undergone a complete change, and contracts of husband and wife to live separately are upheld by the courts, even to the extent of enforcing specific performance of the agreement to live separately. This was brought about by the change of opinion as to public policy. As was said by Jessel Master

of the Rolls.: "For a great number of years, both ecclesiastical judges and lay judges thought it was something very terrible, and against public policy, that the husband and wife should agree to live separate, and it was supposed that a civilized country could no longer exist if such agreements were enforced by the courts of law, whether ecclesiastical or not. But a change came over judical opinion as to public policy; other conditions arose, and people began to think that after all it might be better and more beneficial for married people to avoid in many cases the expense and scandal of suits of divorce by settling their differences quietly by the aid of friends out of court, although the consequence might be that they would live separately, and that was the view carried out by the courts when it became once decided that separation deeds *per se* were not against public policy." *Besant* v. *Wood*, 12 Ch. Div. 605.

In this country the courts, as a general rule, have enforced covenants and promises in deeds of separation relating to the maintenance of the wife and property, provided they are based upon a sufficient consideration, are fair and equal, are reasonable in their terms, and are not the result of fraud or coercion, and the separation has actually taken place when the agreement is entered into, or immediately follows. But contracts which undertake to provide for the separation of husband and wife in the future have been held to be void, because they encourage the parties to neglect those "duties in the fulfillment of which society has an interest." "The distinction," as has been said, "rests upon the following ground: An agreement for an immediate separation is made to meet a state of things which, however undesirable in itself, has in fact become inevitable"—is made to meet a condition. "Still, that state of things is abnormal, and not to be contemplated beforehand. It is forbidden to provide for the possible dissolution of the marriage contract, which is the policy of the law to preserve intact and inviolate. Or, in other words, to allow validity to provisions for a future separation would be to allow the parties, in effect, to make the contract of marriage determinable on conditions fixed beforehand by themselves." *Walker* v. *Walker*, 9 Wall. 741; *Randall* v. *Randall*, 37 Mich. 563; *Carson* v. *Murray*, 3

Paige, 483; *Chapman* v. *Gray,* 8 Ga. 341; *Magee* v. *Magee,* 67 Barb. 487; *Galusha* v. *Galusha,* 116 N. Y. 635; *Fox* v. *Davis,* 113 Mass. 255; *Aspinwall* v. *Aspinwall,* 49 N. J. Eq. 302; *Hutton* v. *Hutton's Admr.,* 3 Pa. St. 100; *Dillinger's Appeal,* 35 Pa. St. 357; *Hibner's Appeal,* 54 Pa. St. 110; *Speidel's Appeal,* 107 Pa. St. 18; *Com.* v. *Richards,* 131 Pa. St. 209; *Scott's Estate,* 147 Pa. St. 102; *Dutton* v. *Dutton,* 30 Ind. 452; *Emery* v. *Neighbour,* 2 Halst. 142; *Com.* v. *Richards,* 131 Pa. St. 209; *Switzer* v. *Switzer,* 26 Grat. 574.

According to some authorities, the deed in question was voidable because it was executed by the husband and wife alone, without the intervention of a trustee. *Switzer* v. *Switzer,* 26 Grat. 574; *Carter* v. *Carter,* 14 Sm. & M. 59; *Stephenson* v. *Osborne,* 41 Miss. 119; *Simpson* v. *Simpson,* 4 Dana, 140; *Chapman* v. *Gray,* 8 Ga. 349; 2 Story's Eq. sec. 1428. On the contrary, courts have upheld deeds of separation to which no trustee was a party. In some of the cases in which this was done the husband was treated as a trustee. *Randall* v. *Randall,* 37 Mich. 563; *Garver* v. *Miller,* 16 Ohio St. 528; *Walker* v. *Walker,* 9 Wall. 743; *Com.* v. *Richards,* 131 Pa. St. 218. But no question as to the necessity of a trustee arises where the contract for separation has been performed by the husband on his part, and the wife has received the full benefit of it. In such cases, if the contract be in other respects valid, equity will enforce the contract. *Hutton* v. *Hutton's Admr.,* 3 Pa. St. 100; *Dillinger's Appeal,* 35 Pa. St. 357; *Com.* v. *Richards,* 131 Pa. St. 218.

In this case the defendants alleged in their answer that the separation of plaintiff and her late husband "had actually been decided upon and had taken place before the execution of the deed, and that she left his house immediately upon its execution, and they have lived separate and apart ever afterwards; that he performed every obligation imposed upon him by the agreement;" "that the deed of separation    *    *    *    was faithfully adhered to and respected by both so long as he lived;" and, "that the provisions made for her in the deed were fair and just according to his estate in every respect, and she received and accepted the full benefit of the agreement, and

abided by it for sixteen years, living apart from her husband and carrying on a separate business for herself." The facts stated in the answers, if true, are an equitable defense, defectively stated, to so much of plaintiff's application as constitutes a claim to a part of her deceased husband's personal estate. They should have shown more fully, by a statement of facts, that the contract for relinquishment of dower and claims for property was, under the circumstances, at the time it was entered into, based upon a sufficient consideration, was fair and equal, reasonable in its terms, and untainted by fraud or coercion. Instead of that, they allege that "the provisions made for her were fair and just, according to his estate, in every respect"—a conclusion which can be reasonably sustained only by the facts necessary to show that the contract as to the wife was based upon a sufficient consideration, was fair and equal, was reasonable and free from fraud and coercion. But this is a defect in pleading which should have been reached by a motion, and not by demurrer.

The invalidity of the deed as a relinquishment of dower in land does not render it wholly worthless as a defense. The invalidity was the result of the want of power in the wife to release her dower in real estate in any manner except the mode provided by the statute, and did not render the whole deed void. The relinquishment of dower was a part of the consideration the husband was to receive for his performance of what he undertook to do. The fact that he did not receive the whole consideration did not deprive him, his administrator or heirs, of that which was released to him—of that which he had received. The right to rescind the contract on this account belonged to him, and not to his wife. She had no right to complain because the dower in real estate was not relinquished.

The demurrer to the answer as to the personalty should have been overruled.

The judgment of the circuit court is, therefore, reversed to that extent, and the cause is remanded, with instructions to the court to overrule the demurrer as to the personal property, and try the cause *de novo* in accordance with this opinion.

RIDDICK, J., did not participate.