## BAZEMORE v. MULLINS.

1. MORTGAGES: *Redemption: Condition of.*
   Where a debtor executes two mortgages to his creditor, one upon lands and the other upon chattels, to secure different debts, and afterwards procures satisfaction of both by a parol release to the mortgage creditor of his equitable interest in the land, and is thus enabled to place the chattels beyond the reach of the mortgagee, equity will not permit him to redeem from the land mortgage without requiring payment of all he owes upon both accounts.

2. SAME: *Equity of redemption: Statute of frauds: Estoppel.*
   A mortgagee may purchase from his mortgagor, the equity of redemption in the mortgaged lands; and where a creditor holding two morgtages from the same debtor—one being a conveyance of land by deed absolute in form, and the other upon chattels—gives his debtor upon a fair settlement, a release of all indebtedness in consideration of a parol release to him of the equitable interest in the land; and the mortgage debtor thereafter places the chattels beyond the reach of the mortgagee, equity will not aid the mortgagor to avoid the parol release of his interest in the lands by reason of the statute of frauds, but will permit the equitable title to vest in the mortgagee by estoppel.

APPEAL from *Columbia* Circuit Court in Chancery.

B. F. ASKEW, Judge.

Bazemore and Harper brought an action of ejectment against Payne and Bailey to recover two tracts of land. They

claimed title to one of the tracts under a conveyance executed by Bailey Baker, and to the other under a deed from J. S. McWilliams. O. W. Mullins was made a party defendant, and filed a separate answer, alleging that he purchased and paid for the lands sued for, and caused his vendors to convey them to the plaintiffs by way of mortgage, to secure a loan of $250 from the plaintiffs to him. He also alleged that the debt had been paid, and made his answer a cross-complaint, praying that the plaintiffs be compelled by decree to convey the lands to him. The cause was transferred to the equity docket, and a receiver was appointed to take charge of the property. The court found that the deeds were mortgages to secure a debt which had been paid, and decreed that the plaintiffs should convey to Mullins by quit-claim deed. They appealed.

*Marshall & Coffman,* for appellant.

1. The final settlement made by the parties, and the verbal sale of the land, settle this question in favor of appellants. A deed absolute on its face, which operates as a mortgage by reason of a defeasance, may, by the cancellation of such defeasance, become absolute, and this without any reconveyance. *Wash. R. P., 4th ed., p. 62.* Part performance of a verbal sale of lands often takes it out of the statute of frauds. *40 Ark., 391; 5 N. Y. Chy. An., p. 952, note; 39 N. W. Rep., 146.* It is impossible to lay down any general rule, but the courts will not allow the statute to be used as a cloak for fraud, especially so when the party cannot be, or the other party will not, put him, in *statu quo.*

2. The consideration of the two mortgage deeds not only included the amount originally advanced Mullins, but all supplies subsequently furnished, and the same have not been paid unless the settlement is allowed to stand. And Mullins, by his acts and silence, is estopped to deny this. *33 Ark., 465; Rose Dig., pp. 307–8.*

3. But Mullins must do equity; he must pay appellants the balance due them, the security for which has been surrendered, and thus put himself in position to ask equity. Or the court should decree the balance due a lien on the lands, and then sold to pay it.

*J. M. Kelso* and *Smoote, McRae & Arnold*, for appellee.

1. The deeds were made to secure only $250. If this amount had not been paid, appellants can recover the possession only of the land, and hold the rents until their debt is discharged. But they could not recover the title. *7 Ark., 310; 13 id., 533; 2 Story Eq. Jur., secs. 788–90.* The $250 was paid and discharged. The payments in 1883–4, are applied by the law to the oldest items in the account successively. *38 Ark., 285; 30 id., 745; 34 id., 285; 39 id., 248; 47 id., 112.* This extinguished the mortgage.

2. The parol sale of the land was within the statute of frauds, and something more than the payment of the purchase money was necessary. *1 Ark., 391; 18 id., 466; 21 id., 533.* Nor can this parol contract enlarge the operation of the deeds. so as to keep them in life and make them a security for debts other than those secured by them at first. *30 Ark., 745; 32 id., 645; 38 id., 285.*

The delivery of the securities and the removal of the property covered by the chattel mortgages, do not take the case out of the statute. The corn and cotton had been delivered before suit, and appellants had no lien on the money paid. Besides these amounted to no more than the payment of the purchase money, which is not sufficient.

COCKRILL, C. J. The conveyances which Mullins caused to be made to the appellants by way of security for his indebtedness were absolute in form. There is a conflict in the testimony as to what indebtedness they were intended to secure. Mullins' statement that they were intended to secure only the sum of $250, which the appellants lent him in January,

1883, is not very probable, because the deed to the Baker tract was not executed until long after that indebtedness had been paid according to his theory; and he took from the appellants a bond to convey to him the other tract upon the payment of $900 in January, 1885, when it was estimated that that was the sum that would be due by him on settlement at the close of that year. But in the view we take of the cause that question ceases to be material.

**1. Mortga-**
**ges:**
**Redemp-**
**tion: Con-**
**dition of.**

Mullins had also executed chattel mortgages to secure all his indebtedness to the appellants. At the close of 1885, a settlement was reached by mutual agreement. The lands in dispute were valued at $400; Mullins orally released to the appellants, all further claim to them and received a credit upon his account for that amount. He discharged the balance due upon his account by delivery of corn, and payment of cash to the appellants, and received from them a receipt showing the full payment of all his indebtedness, and demanded and obtained satisfaction upon the record of his chattel mortgages.

He took the chattels which had been released from the mortgages into Louisiana and there disposed of them, retook the corn and converted it to his own use, and now actively invokes the aid of a court of chancery to invest him' with the title to the land.

He alleges in his complaint that he had discharged his entire indebtedness to the appellants. It appears from his own testimony, however, as it does from all the other evidence in the cause, that the claim of payment alleged in his complaint, is based solely upon the release of his equitable interest in the lands, the delivery of the corn, and the cash payment made in the settlement above referred to.

But if the lands are taken from the appellants, and their value and that of the corn withdrawn from the terms of the settlement, Mullins' debt will be in a great part unpaid; but the security which the appellants held for its payment is gone, and Mullins cannot or will not restore it. It is manifest that it

would be inequitable under such circumstances to cancel the deeds to the appellants without first requiring Mullins to pay to them his entire debt. That would only be requiring him to do equity. *Anthony v. Anhony, 23 Ark., 439; Morgan v. State, ante.*

But there is another consideration which puts a final quietus upon Mullins' claim for relief. His own testimony shows that upon a fair settlement with the appellants, he released his interest in the lands to them for an adequate consideration, a part of which was the cancellation of securities which they held for payment of his debt, which was greater than the value the parties placed upon the lands.

2. SAME: Equity of redemption: Statute of frauds: Estoppel.

The law does not inhibit the mortgagee from purchasing the equity of redemption from his debtor, but demands the utmost fair dealing of him in the transaction. There is not a suggestion of unfairness or oppression in this case on the part of the appellants in making the settlement or taking the release. There is nothing to show that the lands were not taken at their fair market value. The price was fixed by arbitrators, one of whom was selected by Mullins, and the other by the appellants, and the proof shows that Mullins would not agree to any settlement whatever until the appellants consented to take the lands in part payment at the price fixed by the arbitrators. He does not undertake to controvert these facts, but relies upon the statute of frauds to consummate his scheme. He argues that he has sold an interest in the land by parol, and that the payment of the purchase money does not alone constitute a part performance of the contract sufficient to take it out of the operation of the statute.

But it is a settled doctrine of equity never to lend its aid to one who invokes it for the purpose of perpetrating a fraud. Mullins is in that attitude. He induced the appellants to surrender to him the securities they held for his debt, and now when the court cannot place them in *statu quo*, seeks to annul his compact and leave them without land or security. In such

a case the courts withhold their aid, and leave the deed, which is absolute in form, to carry the estate in fee as it purports to do. *Pugh v. Davis, 96 U. S., 332; Trull v. Skinner, 17 Pick, 213; 2 Wash. Real Prop., \*496, sec. 24.* As was explained by Chief Justice Shaw, in *Trull v. Skinner, supra,* the equitable interest of the party at fault is in such case divested, not by way of transfer, nor strictly speaking by way of release working upon the estate, but rather by an estoppel arising from the voluntary act of the party having the equitable interest, just as it is accomplished when one withholds his conveyance from record and permits his grantor to convey to a *bona fide* purchaser without notice. The doctrine allowing a conveyance to absorb an interest in land which the conveyance alone did not convey, in order to prevent injury being done to one without fault, is of frequent application, and is illustrated by the cases of *Bramble v. Kingsbury, 39 Ark., 131,* and *Gill v. Harden, 48 ib., 409.* In the latter case one who had executed an absolute deed to have effect only as a mortgage, and who remained in possession of the land which he conveyed, was denied the aid of equity to assert his title against an innocent purchaser, from the holder of the legal title because the proof showed that he was not in position to ask equity. We make application of the same principle to the facts of this case.

The decree will be reversed and the cause remanded with instructions to dismiss Mullins' cross-complaint, to cause the receiver to pass his accounts and pay what he has collected to Bazemore & Harper, and to award them possession of the lands.