## MURPHY v. BOOKER.

## Opinion delivered July 14, 1919.

1. MORTGAGES—DEED AS MORTGAGE.—Where it appears that a deed, absolute in form, was intended as a mortgage, equity will carry out the real intention of the parties.

2. MORTGAGES—DEED AS MORTGAGE—EFFECT OF NEW CONTRACT.—Although the intention of the parties at the time of execution was that a deed, absolute in form, was in fact a mortgage, they are bound by the terms of a contract, subsequently entered into, wherever it is in conflict with the original agreement, when the new contract is founded upon an adequate consideration, and is fair and reasonable in its terms, and free from fraud.

3. EQUITY OF REDEMPTION—WAIVER.—The equity of redemption may be waived by a written agreement.

4. MORTGAGES—DEED AS MORTGAGE—AGREEMENT THAT THE DEED STAND.—Although a deed absolute in form is made a mortgage by a collateral agreement, the contracting parties may then, for a valuable consideration, agree that the deed stand.

5. DOWER — SEIZIN IN HUSBAND — EQUITABLE ESTATE.—Under the statute giving the right of dower, there may be dower in an equitable estate, but there must be such a right of immediate possession on the part of the husband as to constitute seizin in law.

6. DOWER—EQUITABLE ESTATE—FORECLOSURE.—A. owned lands and lost title by the foreclosure of a mortgage thereon.  B. purchased at foreclosure sale, and later sold to C.  The time for redemption expired, but A. and C. entered into an agreement whereby A.'s right of redemption was recognized by C.  Thereafter A. and C. entered into a second agreement cutting off A.'s right.  *Held,* A.'s title was extinguished by the foreclosure sale to B. and that A. did not reacquire title, either legal or equitable, so as to constitute an estate of inheritance with seizin in fact or in law under his first agreement with C.; at most he acquired only an equitable right to hold C. as a trustee and he still had the

power to contract away the rights thus acquired, which he did, and therefore *held,* that A.'s wife was without right to redeem the lands from C., according to the terms of the first agreement.

Appeal from Lafayette Chancery Court; *James M. Barker,* Chancellor; reversed.

*Searcy & Parks,* for appellant.

1. The transaction was a deed. Plaintiff had no title to the land, either legal or equitable, which must exist to constitute a mortgage. 86 Ala. 289; 5 So. 722; 55 Ala. 607; 96 Ill. 456; 16 Fla. 466; 13 Ill. 186; 60 *Id.* 516; 20 Am. Dec. 145; 77 Pa. 134; 73 Ill. 156; 172 *Id.* 82; L. R. A. 1916 B, p. 154, § 98.

2. The evidence fails to show that the deed was a mortgage. 153 S. W. 797. To show that a deed, absolute on its face, is a mortgage to secure a debt, the evidence must be clear, unequivocal and convincing. 88 Ark. 299; 75 *Id.* 551; 165 S. W. 273; 113 N. Y. 991; 92 N. E. 1077; 53 So. 814; 113 Pac. 34; 61 So. 881; 46 *Id.* 851. It must have been the intention of both parties, when the deed was executed, to execute a mortgage. 45 So. 168; 22 Kan. 661; 55 *Id.* 82; 39 Pac. 1024; 79 *Id.* 929; 19 R. C. L., § 35, title, Mortgages; 114 Ark. 121; 200 S. W. 1023.

All the circumstances tend to show that the transaction was not a mortgage. Plaintiff, under the agreement, had no right to tender the amount and demand a deed. The tender was not in good faith and plaintiff is estopped to claim the deed was a mortgage. 89 Va. 628; 16 S. E. 749; 206 S. W. 749; 96 U. S. 544.

3. The exceptions to the master's report should have been sustained.

*J. M. Carter,* for appellees.

1. The instrument was a mortgage and under the facts Murphy did not establish his debt and was not entitled to foreclose against Booker and the lands.

2. Booker had equities in the land—the right to redeem from the two sales to Paschal. Kirby & Cas-Digest, sections 5814 and 8748; 54 Ark. 457; 38 Ark. 364, 270; 13 *Id.* 112. In doubtful cases the court should

construe the contract to be a mortgage rather than an absolute sale. 27 Cyc. 1799, 1801; 165 S. W. 278; 106 *Id*. 489; 134 Ark. 196; 71 N. Y. 176.

3. Mrs. Booker had the right to redeem. The great preponderance of the evidence shows that the land was worth more than $50,000. 6 Ark. 274; 52 N. Y. 551; 42 Cal. 169; 8 Kan. 380; 21 N. Y. Eq. 414; 4 W. Va. 4; 65 N. C. 520.

The evidence shows that the contract was intended to be a mortgage, and the rights of the parties are measured by the rules of law applicable to mortgagors and mortgagees and the instrument remains a mortgage until the equity of redemption is foreclosed and the mortgagee can not have ejectment until after foreclosure. 1 Rice on Ev. 269; 31 N. Y. 399; 19 N. J. Eq. 166; 25 Ia. 19.

4. The rents charged were supported by the weight of the testimony. The mortgage to the American Investment Company was assumed by Murphy in the deed from Paschal and had never been foreclosed and Mrs. Booker had the right to redeem. Kirby & Castle's Digest, § § 2901, 4311, 7437, 4750, 7443; 57 Ark. 248; 94 *Id*. 107; 55 *Id*. 235; 85 U. S. 141. She was not barred by the foreclosure, as her right to dower was not directly in issue. 86 Ark. 540; 67 *Id*. 15; 61 *Id*. 547; 27 Cyc. 1807; 3 L. R. A. (N. S.) 1068; 53 N. Y. 298; 13 Am. Rep. 523; 2 Jones on Mortg. (6 ed.), § 1067; Thomas on Mortg. (2 ed.), § 622; 73 Va. 413.

McCULLOCH, C. J. This is an action instituted by appellees in the chancery court of Lafayette County against appellant in which the court was asked to declare a certain deed of conveyance in absolute form to be a mortgage and to allow redemption therefrom.

The lands in controversy aggregate 1,242 acres, of which a large portion is in cultivation and they were originally owned and occupied by appellee, Paul M. Booker. His wife, Martha E. Booker, joined with him in this suit. On December 11, 1913, appellees conveyed the lands to appellant by deed absolute in form reciting a considera-

tion of "the sum of one dollar and other valuable consid-
erations." It is alleged that this deed, though absolute
in form, was intended by the parties as a mortgage. Ap-
pellees had previously mortgaged the land to the Ameri-
can Investment Company to secure indebtedness to that
concern, and also to the Windsor Trust Company to se-
cure a large debt. The first mentioned mortgage had
been foreclosed by decree of the chancery court and
the statutory period of redemption had expired and
a deed had been executed by the court's commis-
sioner to W. B. Paschal, the purchaser, about two
months before the execution of the deed by appellees to
appellant. Paschal held title under his deed at the time
of the conveyance to appellant and had also purchased the
land under a foreclosure decree rendered by the chancery
court of Lafayette County to enforce levee taxes due the
improvement district known as the Long Prairie Levee
District. The time for redemption under that sale had,
too, expired and Paschal had received his deed from the
court's commissioner. Appellant, after receiving the
deed from appellees, also secured a conveyance from Pas-
chal, the same being executed for the consideration of
$37,400, which included the assumption by appellant of
the payment of the unforeclosed mortgage to the Wind-
sor Trust Company.

Appellees alleged in their complaint that, at the time
of the execution of their deed to appellant, Paul M.
Booker was still the owner of the land and had the right
of redemption from the judicial sales to Paschal, but that
he was financially embarrassed and unable to redeem from
the sales of the land and pay off the other indebtedness,
and that appellant at that time entered into an oral agree-
ment with him to the effect that appellant should redeem
the land from Paschal and allow him (Booker) to re-
deem by repayment of the sums paid out by appellant
with eight per cent. interest, and that it was also agreed
that Booker should remain in possession of said lands
and cultivate the same from year to year and that if the
lands could be sold, the profits over and above the ex-

penses of redemption would be divided between the parties. Appellant denied in his answer that appellee Booker owned the lands or had the right of redemption from the sales to Paschal or that there was any agreement, oral or otherwise, entered into by him with Booker whereby the latter was to be permitted to redeem the lands. He alleged in his answer that the only agreement entered into at that time was to the effect that, if Booker could find a purchaser for the lands at a price acceptable to appellant, Booker should receive a certain portion of the sale price over and above the sums paid by appellant for the purchase of the lands. Appellant also alleged in his answer that there subsequently arose a controversy between him and appellee Booker as to the terms of their agreement and that on January 6, 1915, they entered into a written contract which settled the rights of the parties. The contract is exhibited with appellant's answer. It recites the controversy between the parties and that the contract was to be in "compromise and settlement of their differences," and, after reciting a statement of the amount necessary to reimburse appellant for the sums so paid in the purchase of said lands, provides in substance that if Booker should find a purchaser for the lands at any time within three years from that date at a price not less than $50 per acre, and the sale be consummated, out of the proceeds of sale appellant should be reimbursed in the sum of of $40,480.10 theretofore expended by him in the purchase and all sums expended by him between that date and the date of sale for improvements, including clearing and repairs, with interest at eight per cent. and that the excess price obtained for the land over and above the total of the above mentioned sums should be equally divided between the parties. The contract concludes with the following paragraph:

"In the event that a purchaser who is ready, able and willing, as above defined, to purchase said lands at the price herein set out, to-wit: Not less than $50 an acre, is not produced by party of the second part within three years from this date, then in that event any and all in-

terest or claims of party of the second part in and to any profits arising from the sale of said lands, and any and all claims or interest in or upon said lands by virtue of the contract mentioned as a part of the consideration in his deed to the party of the first part dated December 11, 1913, shall terminate and be forever barred, and all indebtedness herein mentioned as being due from party of the second part to party of the first part shall by said event stand satisfied and canceled.''

The cause was heard by the chancellor on conflicting testimony as to the substance of the oral agreement between the parties at the time of the execution of the deed by appellees to appellant. The chancellor found in favor of appellees and declared the deed to be a mortgage, and after reference to a master ascertained the balance due, and allowed a redemption.

We deem it unnecessary to discuss the testimony in detail or to determine whether or not it was sufficient to justify the finding that the deed was intended as a mortgage. We will rest our decision on another phase of the case. Suffice it to say that there was a conflict in the testimony and that at the time of the execution of the contract of January 6, 1915, a controversy had been pending between the parties as to the substance of their oral agreement. Nor do we deem it necessary to determine whether or not appellees had such an interest in the lands at the time they conveyed to appellant as to legally justify the claim that the deed should be treated as a mortgage. The time for redemption from the sales of the lands to Paschal had in fact expired, and the title of Booker had been extinguished, but he testified that Paschal, or the mortgage company, had verbally agreed to extend the time for redemption, and according to Booker's testimony the parties to the transaction now under consideration proceeded upon the assumption that he (Booker) had an interest in the lands and that the purchase by appellant from Paschal was to be treated merely as a redemption. Assuming, therefore, without deciding, that under the circumstances described there was an

agreement between Booker and appellant, which the latter should in equity have been bound to observe, with respect to treating the conveyance as a mortgage, we proceed to a determination of the question urged by counsel for appellant that in any event, appellees are bound by the contract of January 6, 1915.

(1) We are of the opinion that the contention is sound. Conceding that the original conveyance in absolute form was intended by the parties as a mortgage, yet there subsequently arose a *bona fide* controversy between the parties concerning that fact, and they adjusted the matter by a new contract, which speaks for itself. The equitable doctrine regarding declaring a deed in absolute form to be a mortgage so as to conform to the real intention of the parties has often been announced by this court, and in whatever form the contract may be expressed in writing, a court of equity will carry out the real intention of the parties by declaring the written deed or contract to be a mortgage when it is shown by evidence "clear, unequivocal and convincing" that such was the intention of the parties. *Wimberly* v. *Scoggin, Receiver,* 128 Ark. 67.

(2) But it is equally clear that when the parties to a dispute see fit to adjust their differences by a new contract covering the subject-matter they are bound by it, whatever may have been the original effect of the transaction. The doctrine is stated as follows in a text book on the subject:

"By an independent parol agreement the mortgagor may waive his right under a deed which originally, in effect, was a mortgage, and if this agreement is supported by a consideration, or is partially acted on by the parties, or fully performed, the mortgagor is estopped to deny the grantee's absolute title. The grantee has the legal title already, and the grantor may cut off all right to redeem by a receipt of an adequate consideration thereof, and an informal release of all his interests in the property. But the new agreement must not only be founded on adequate consideration but must be fair and

reasonable in its terms and free from fraud or undue influence.'' 1 Jones on Mortgages, § 338. The text is supported by the following authorities: *Perkins* v. *Drye,* 3 Dan. 170; *School* v. *Hopper,* 134 Ky. 83; *Scanlan* v. *Scanlan,* 134 Ill. 630; *Cramer* v. *Wilson,* 202 Ill. 83; *Hutchinson* v. *Page,* 246 Ill. 71; *Jordan* v. *Katz,* 89 Va. 628; *McMillan* v. *Jewett,* 85 Ala. 476; *Haggarty* v. *Brown,* 105 Iowa 395; *Sears* v. *Gilman,* 199 Mass. 384.

(3-4)   The Kentucky Court of Appeals in the case of *School* v. *Hopper, supra,* concluding the discussion on this subject said: ''Inasmuch as the deed was absolute in form, and was made a mortgage by the collateral agreement, it was within the power of the contracting parties for a valuable consideration to agree that the deed should stand as made.'' For a much stronger reason, the equity of redemption may be waived by a written agreement. The settlement of the dispute and the mutuality of the terms of the new contract furnish the consideration for its execution. This view of the matter is sustained by the decision of this court in the case of *Bazemore* v. *Mullins,* 52 Ark. 207, where the court held that under a conveyance of land in absolute form, but intended as security for debt, the mortgagor could estop himself by his conduct from asserting title to the land. Of course, if it were shown that the new contract, notwithstanding it was in the form of an agreement concerning the sale of the property, was really intended as a continuation of the mortgage, then a court of equity would enforce it as such, but there is no testimony in this case which would warrant any such conclusion. When this contract was entered into the parties had, as before stated, been in controversy for some time as to the terms of the original agreement. They were both represented by counsel in their several meetings for the purpose of discussing a settlement and this contract was submitted to and approved by appellees' counsel before it was signed. There was no advantage taken of Booker in the negotiations, and the proof is clear that he understood fully the effect of the contract he signed. It is true that

he claims that he objected to the terms of the contract at the time he signed it and gave notice to appellant that he would insist on his right to redeem from the mortgage, but he could not thus accept the terms of the contract by signing it and repudiate it by giving notice that he would not live up to it. The intention to continue the existence of the mortgage must have been a concurring one in order to justify a court of equity in preserving the right to redeem. *Rodgers* v. *Burt,* 157 Ala. 91. The preponderance of the testimony is to the effect that Booker did not object to the contract on the ground that it excluded his right to redeem, but his objection was concerning another feature of the contract. But, whatever may have been his expressed objection to the contract, he bound himself to compliance with its terms by signing it, and he can not, after the parties have acted upon it until the expiration of the time allowed before making the sale, recur to the original agreement which was settled by the contract. Not only did Booker wait until the time had nearly expired before he made any further objection to the contract or offered to redeem, but the proof shows that appellant took possession of the lands and made valuable and expensive improvements.

(5-6) It is contended, however, by counsel for appellees that, even if Paul Booker was estopped by the contract to assert the right of redemption, his wife, Martha E. Booker, was not a party to the contract and had the right to redeem according to the original agreement. This contention is based upon the assertion that a part of the lands constituted the homestead of appellees and that she also had an inchoate dower right.

The lands did not constitute the homestead. For two years before the purchase of the lands by appellant from Paschal they had been in the hands of a receiver appointed in the foreclosure suit and appellee Booker had occupied them merely as a tenant of the receiver. Paschal acquired the title from the foreclosure sales and conveyed it to appellant. It is true that Booker occupied the lands during the year 1914, but he did so under

the agreement with appellant to pay rent. He moved off the premises about the time the contract of January 6, 1915, was executed.

There was no inchoate dower right for the reason that the husband, Paul M. Booker, was not seized of an estate of inheritance after his title was extinguished under the foreclosure sales to Paschal. Under our statute giving the right of dower, there may be dower in an equitable estate, but there must be such a right of immediate possession on the part of the husband as to constitute seizin in law. In *Tate* v. *Jay,* 31 Ark. 576, the court said: ''Seizin is either in deed, or in law; seizin in deed, is actual possession; seizin in law, the right to immediate possession. Unless such seizin existed during coverture there can be no dower, because it is an indispensable requisite to her right to dower, so declared by statute.'' Since Booker's title had been extinguished by the foreclosure sales to Paschal, he did not re-acquire title, either legal or equitable, so as to constitute an estate of inheritance with seizin in fact or in law under his original agreement with appellant. He, at most, acquired only an equitable right to hold appellant as a trustee and he still had the power to contract away the rights thus acquired. He could do so either by his contract in writing or by acts constituting estoppel as was held in *Bazemore* v. *Mullins, supra.*

We are of the opinion, therefore, that the chancellor erred in failing to give effect to the last contract between the parties and in rendering a decree in favor of appellees. The decree is, therefore, reversed, and the cause remanded with directions to dismiss the complaint for want of equity.