## GREEN *v.* GILBERT.

Opinion delivered October 19, 1925.

1. MORTGAGES—PURCHASE OF EQUITY OF REDEMPTION BY MORTGAGEE.—While the law does not inhibit a mortgagee from purchasing the equity of redemption from his debtor, it demands of him the utmost fair dealing in the transaction.

2. MORTGAGES—VALIDITY OF CONVEYANCE BY MORTGAGOR TO MORTGAGEE.—Evidence *held* to establish that an absolute deed by a mortgagor to a mortgagee conveying his equity of redemption in land was executed voluntarily for an adequate consideration and without any element of fraud or unfairness in the transaction.

Appeal from Ouachita Chancery Court, Second Division; *George M. LeCroy,* Chancellor; affirmed.

*C. P. Harnwell,* for appellant.

*T. J. Gaughan, J. E. Gaughan, E. E. Godwin* and *J. T. Sifford,* for appellee.

WOOD, J. This is an action by the appellant against the appellees to set aside a certain deed executed by the appellant and his wife to one D. C. Gilbert, and also certain leases executed by Gilbert to various parties, and a mortgage executed by Gilbert to one McClurkin. Gilbert and all the parties holding interest under instruments executed by him were made parties defendant.

The appellant alleged that the original deed which he seeks to have cancelled executed by him to Gilbert was in fact a mortgage given to extend the indebtedness covered by a previous mortgage which the appellant had executed to Gilbert; that the appellant executed the deed supposing that the same was a mortgage; that the consideration named in the instrument which appellant supposed was a mortgage and in fact a deed was $2,092.65. The appellant alleged that he was the owner of the lands subject to a mortgage on the same for any indebtedness that he might be due the appellees less certain credits. He prayed that his deed to the appellees be declared a mortgage, and that he have an accounting with Gilbert, and that the excess due Gilbert over and above the mortgage indebtedness be paid the appellant.

There was an answer by the Gilberts and McClurkin, denying the material allegations of the complaint and alleging that the deed which the appellant seeks to have declared a mortgage was in fact a deed executed by the appellant to the appellee Gilbert for a consideration of $2,500, and that McClurkin, without any knowledge of any supposed equity or interest of the appellant, advanced to the appellee Gilbert the sum of $1,000 which Gilbert secured by a mortgage on the lands mentioned in the complaint. Answers were filed by the other appellees in which they set up the interest claimed by them from Gilbert, and alleged that they were innocent purchasers for value.

The testimony was taken *ore tenus* before the court and was properly authenticated and brought into the

record. The appellant testified to the effect that he had been indebted to the appellee Gilbert and had mortgaged the land described in the complaint to secure such indebtedness. This mortgage was executed on November 22, 1920, by the appellant and wife and was to secure the indebtedness to Gilbert evidenced by note as recited in the mortgage in the sum of $2,092.65, due October 1, 1921, and the mortgage also covered all other indebtedness which might be due Gilbert by the appellant on the due date of the note. Gilbert wrote the appellant a note dated November 10, 1921, asking the appellant and his wife to come down that day and sign some papers. Before appellant and his wife went down, Gilbert came to appellant's house and told the appellant and his wife that he wanted them to deed the land to him. Appellant objected, telling Gilbert that he should have the land for two years. Gilbert told appellant that he could close the mortgage at any time, and stated that the court would make a deed if appellant did not. Before the deed in controversy was executed, Gilbert brought McClure out to appellant's house, and appellant and his wife, on the 29th of October, 1921, entered into a written contract with one McClure to sell him the land mentioned for $2,500 in cash, to be paid on October 31, 1921. Gilbert told the appellant at that time that it would be all right for him to sell the land to McClure; that appellant would get seven or eight hundred dollars over and above the mortgage indebtedness of $2,092.65. The mortgage was not due at that time, but Gilbert told appellant that he could close it out whenever he wanted to. Appellant further testified that he didn't see McClure after the contract to sell him the land was executed; that the deal fell through. Appellant had paid on his mortgage to Gilbert ten bales of cotton in 1920 at 17c a pound and in 1921 seven bales at 17c a pound. Gilbert told appellant that he had given him credit for all of this cotton.

Appellant further testified that Gilbert had been after him a time or two to go with him to the bank and to tell them to turn the money over to him. The appellant

was busy and didn't go, and Gilbert wrote out these papers and got mad and cursed appellant and said the appellant had to go with him before Lester and sign the papers. He and his son-in-law marched appellant down to Lester's to sign the papers. Gilbert had them all written out, and appellant signed them. Appellant then testified, giving the items, that Gilbert had advanced to appellant, amounting in all to about $1900, which should have been a consideration named in the mortgage, instead of the $2,000. The appellant did not owe Gilbert $500 in addition to what he owed on the mortgage. Appellant knew nothing about mathematics, and simply had to take Gilbert's word for it. Gilbert brought appellant out in debt to him. Appellant stated that, before he made the deed to Gilbert, he went to Gilbert's house and went over all Gilbert's accounts with him and had a fair and square settlement, and Gilbert gave appellant credit for $2,500 and appellant still owed him $60, which he got a Mr. Kinard to pay for him. Appellant knew that he was making Gilbert a straight deed to the land. Appellant moved off the place. Gilbert wanted appellant to give him two bales of cotton, and appellant could not get it. Appellant acknowledged that he had signed certain papers addressed to the Stevens Bank, dated December 2, 1922. Appellant stated that in the first of the fall of 1921 there was a demand for leases and royalty. The closest oil well to his land was about a mile away, and a location had been made on appellant's land before he executed the McClure contract and the deed to Gilbert. Gilbert had told appellant not to trade with any one without his advice, and that he, Gilbert, would trade to appellant's advantage. It was shown that the mortgage which appellant had previously executed to Gilbert was satisfied on January 18, 1923.

McClure testified that Gilbert approached him in regard to paying royalties or leases on lands, which the witness was doing at that time. Gilbert stated that he had the lands in question for sale or the mineral rights. Witness understood that Gilbert owned the land, from

the way he talked. He proposed to take witness out and show him the land. While they were going out to see the lands, Gilbert told witness that he didn't own the lands but had a mortgage on the same. He introduced witness to the appellant, and the contract was made and signed in Gilbert's presence. Gilbert agreed to look after and have the abstracts prepared for the appellant. Gilbert was anxious for appellant to sell and urged the sale. Gilbert informed witness that his mortgage was for less than $2,500.

Will Green, a son of the appellant, testified substantially corroborating his father's testimony.

There was a stipulation to the effect that all of the instruments mentioned in the complaint were to be considered in evidence; that Gilbert had sold to one Stewart, January 24, 1923, a royalty interest in the land for $1,000, and on November 6, 1923, a royalty to one Hillman for $600, and a royalty interest to Pride & Winters for $660.

The testimony of the appellee was to the effect that McClure knew that appellee had a mortgage on the land when appellant entered into a contract with McClure to sell him the land. McClure refused to buy the land, stating that the abstract didn't come up as it should. Witness tried to get appellant to sell the land. Appellant came to witness' house and stated that, if McClure didn't take the land, witness would have to take it. Witness denied that he threatened to foreclose and also denied that he told appellant that the court would make him give witness a deed if appellant didn't execute the deed; that appellant and his wife went through witness' account with the witness and said it was satisfactory. The witness gave appellant credit for $2,500. The amount named in the mortgage was the correct amount when the same was executed. At the time the appellant executed the deed to witness he owed witness a balance on account of $57.65, after witness had credited him with the sum of $2,500. A man by the name of Kinard paid witness the balance of appellant's account. Witness

gave appellant back his note and mortgage. After that appellant left the place and would not rent it from witness. Witness did not tell appellant that there would be some seven or eight hundred dollars coming to him if appellant sold the place for $2,500. Witness stated that at the time he settled with the appellant he had a copy of the figures and gave appellant the amount. He could not itemize appellant's accounts; didn't know that he was being sued for an accounting. He didn't try to recollect the amounts. He had put them on his books and didn't think he would need his books when he was testifying. He stated that he had written appellant a note to come to witness' house to fix up some papers, and he then obtained the deed from appellant.

W. E. Gilbert, son of appellee Gilbert, testified that appellant came to his father's house sometime after the deed was made, and they went through appellant's account. Witness stated that appellant was credited with the ten bales of cotton; that appellant made no objection to any item of the account and was satisfied. They credited appellant with $2,500, and he still owed $57.65. On cross-examination this witness stated that he didn't remember the amount of cotton, rent, or any of the items with which appellant was charged, but that appellant got about $1,000 worth of provisions while making his one crop.

A Mrs. Voss testified that she heard the settlement between Gilbert and Green, and the settlement and account at the time were satisfactory to Green.

Witness McClurkin testified, among other things, that appellant told him after the suit was instituted that he knew he was giving Gilbert a deed. The notary who took appellant's acknowledgment to the deed stated that he didn't tell appellant the instrument was a mortgage, but told him it was a deed:

There were letters to the bank in evidence which appellant acknowledged signing, stating in effect that if any one should pay any money or checks into the bank to be placed to appellant's credit as rental on the land

described in the deed, he (appellant) desired that the same be placed to the credit of Gilbert, and stating that appellant had sold the land to Gilbert and had executed to him a warranty deed for the same. Gilbert testified that these letters to the bank were not obtained by him from appellant by threats or coercion of the witness or his son-in-law, Prim. Prim testified to the same effect.

The cashier of the People's Bank at Stephens, Arkansas, testified that he had known the appellant for a number of years; that appellant had talked to him about the deed he had made to Gilbert. He stated that he was having some oil and gas lease rentals paid into the bank for his account, but that he had sold the land to Gilbert, and he wanted witness to turn over the rentals to Gilbert; that Gilbert was entitled to same. Witness asked appellant to give witness a written order to that effect, which appellant did.

This action was instituted by the appellant on August 27, 1923.

It is well settled, as is said by Chief Justice COCK-RILL, speaking for the court in *Bazemore* v. *Mullins*, 52 Ark. 207-211, that "the law does not inhibit the mortgagee from purchasing the equity of redemption from his debtor, but demands the utmost fair dealing of him in the transaction."

Under our statute, §§ 4112 and 4113 of Crawford & Moses' Digest, providing in substance that the party holding the affirmative of an issue must prove it, and that the burden of proof in the whole action lies upon the party who would be defeated if no evidence were given on either side, the burden of proof in this action was upon the appellant Green to show that the absolute conveyance which he seeks to set aside was executed in extinguishment of his equity of redemption in a mortgage that he had previously executed to the appellee, Gilbert. Having shown this, he established a *prima facie* case. Then the burden shifted to Gilbert, the appellee, to show that the transaction was voluntary on the part of the appellant Green and based upon an adequate considera-

tion; that is, that Gilbert extinguished the equity of redemption and obtained an absolute conveyance of the land in controversy by satisfying a debt which Green owed him of the full value of the mortgaged property, or, if Green was not indebted to him in such amount, that he paid to Green the difference between the mortgage debt and the full value of the mortgaged property; and that the entire transaction was fair, frank and free from any indication of fraud, oppression and undue influence. We approve the doctrine announced by Mr. Black in his article on "Mortgages" in 27 Cyc. p. 1373, as follows: "It is perfectly competent for the mortgagor to sell, and for the mortgagee to buy, the equity of redemption by a subsequent and independent contract entered into in good faith and for a good consideration, or for the mortgagor to surrender the absolute ownership of the premises to the mortgagee as payment of the debt. But courts of equity scrutinize such a transaction between the parties closely and with jealous care, and will not allow it to stand unless shown to be entirely fair and honest; for the bargain will be set aside if it appears to have been induced by any fraud, artifice, overreaching, or advantage taken by the mortgagee of his commanding position with reference to the property, or of the ignorance, inexperience, or necessitous circumstances of the mortgagor. A mortgagor's claim for relief on this ground must be made promptly, and will be denied if unreasonably delayed."

The Supreme Court of the United States in *Villa* v. *Rodriguez,* 12 Wallace 333-339, announced the doctrine on this subject as it generally prevails throughout the American Union as follows: "The law upon the subject of the right to redeem where the mortgagor has conveyed to the mortgagee the equity of redemption is well settled. It is characterized by a jealous and salutary policy. Principles almost as stern are applied as those which govern where a sale by a *cestui que trust* to his trustee is drawn in question. To give validity to such a sale by a mortgagor, it must be shown that the

conduct of the mortgagee was in all things fair and frank, and that he paid for the property what it was worth. He must hold out no delusive hopes; he must exercise no undue influence; he must take no advantage of the fears or poverty of the other party. Any indirection or obliquity of conduct is fatal to his title. Every doubt will be resolved against him. Where confidential relations and the means of oppression exist, the scrutiny is severer than in cases of a different character. The form of the instruments employed is immaterial. That the mortgagor knowingly surrendered and never intended to redeem is of no consequence. If there is vice in the transaction, the law, while it will secure to the mortgagee his debt with interest, will compel him to give back that which he has taken with unclean hands. Public policy, sound morals, and the protection due to those whose property is thus involved, require that such should be the law.''

In an exhaustive annotation to *Mintz* v. *Soule,* L. R. A. 1916B, at page 447, the author says: ''The American courts, on the other hand, have generally taken the position that the mortgagee must discharge the burden of proving that the transaction was a fair one. In doubtful cases a continuance of the relationships of mortgagor and mortgagee is inferred.'' Numerous citations to support the text of the author of the annotation are contained in a foot note. See also 19 R. C. L. p. 386, § 160, and other authorities cited in appellant's brief.

Now the facts are fully set forth above, and they speak for themselves. It could serve no useful purpose to discuss them in detail. The decided preponderance of the testimony by disinterested witnesses and by witnesses who were not related to the parties shows that the deed in controversy was executed by Green to Gilbert voluntarily. The testimony of Mrs. Voss and of Smith, the cashier of the Bank of Stephens, tended to prove that Green executed the instrument voluntarily, and knew at the time that he executed an absolute conveyance to

the lands in controversy. A decided preponderance of the testimony in the record likewise shows that the land was not worth more than the sum of $2,500 at the time the deed was executed. There is a sharp conflict between Gilbert and his son and Green as to whether Green was due the full amount of $2,567.65, the amount claimed by Gilbert and the amount for which the settlement was made. The testimony of Gilbert and his son showed that the items of the account were gone over in the presence of Green and his wife, and that the settlement was satisfactory and made upon the basis claimed by Green. The testimony of Mrs. Voss was to the effect that she was in a position to hear all that was said at the time the settlement was made, and she corroborates Gilbert and his son. Green claimed that he signed the letters to the bank under duress—threats made by Gilbert and his son-in-law, but Gilbert and his son-in-law categorically denied that any such threats were made.

After a careful consideration of all the testimony in the record, we are convinced that the deed in controversy was executed by Green to Gilbert voluntarily and for an adequate consideration and without any element of fraud or unfairness in the transaction. Certainly, it cannot be said that the finding of the chancellor to that effect is clearly against the weight of the evidence. The correctness of such finding and decree is fortified greatly by the fact that Green, although claiming that the deed executed by him was under duress and fraud, waited for a period of almost three years before asking a court of chancery to set aside the deed. This fact tends strongly to show that Green himself knew that the deed was not obtained through fraud and duress perpetrated upon him by the appellee Gilbert. The chancellor, therefore, was fully justified in entering a decree dismissing the appellant's complaint for want of equity, and the same is therefore affirmed.