ROETZEL *v.* BEAL.

4-5030

Opinion delivered April 11, 1938.

6

*Culbert L. Pearce,* for appellants.

*Herbert Moody* and *Brundidge & Neelly,* for appellee.

SMITH, J. On December 26, 1928, T. E. Beal and Walker Ladd became sureties on the bond of Otis

Wheeler as administrator of the estate of L. H. Wheeler. The administrator failed to account for and pay over assets which had come into his hands as administrator, and on January 14, 1932, the probate court entered judgment against the administrator and his sureties for $1,-022.41. On appeal, judgment was rendered on December 12, 1932, for the same amount against the administrator and his sureties.

On July 30, 1932, Beal executed a warranty deed to his wife conveying the lands here in question for the recited consideration of $3,003.

The administrator had paid all the probated demands except that of the Bald Knob Fruit Exchange, Inc. That company became insolvent and John Q. Adams was appointed receiver. Adams, as receiver, filed suit to set aside the deed from Beal to his wife on the ground that the deed had been executed in fraud of the Fruit Exchange Company, and that relief was granted. Thereafter an execution was levied upon the lands thus uncovered, and Adams, as receiver, became the purchaser at the execution sale and received an execution deed from the sheriff, whereupon he satisfied the judgment and decree upon which the execution had issued. On May 9, 1936, Adams, as receiver, conveyed the lands purchased at the execution sale to J. A. Roetzel, who, on March 27, 1937, conveyed them to J. A. McKamey.

Beal died October 3, 1936, leaving no issue, but survived by his wife, who brought suit, making all persons interested parties, to have dower assigned her in the lands which had been sold under the execution. These were not ancestral lands, but were a new acquisition. There were no creditors, and from a decree awarding Mrs. Beal a one-half interest in fee simple as dower is this appeal.

It is apparent, from the facts stated, that the controlling question in this case is whether the sale of the husband's land, under a judgment and execution against him, bars the wife's right of dower therein, upon the husband's death.

There are a large number of cases bearing upon this question, but it would be a work of supererogation to attempt to review them and to point out the distinctions between them. The value of any case from another jurisdiction would depend upon the similarity of the statutes construed to our dower statutes.

Many cases are cited in the note to § 174 of the chapter on Dower in 19 C. J. 520. That section reads as follows: "The wife's dower right is barred by sale on execution where the common-law right of dower is limited by statute to lands of which her husband died seized or possessed, or where by statute the right of dower does not attach for the purpose of enjoyment until all his debts are paid. Under a statute providing that no judgment against the husband shall prejudice the wife's right to dower, her dower right is not divested by sale under a judgment on a creditor's bill against the husband to which the wife was not a party, even though a person having a right to a vendor's lien was made a defendant and was preferred by the judgment."

Appellant says this appeal presents three questions, which are stated to be: First, Is appellee entitled to dower; Second, If so, will she take one-third for life under § 4396, or one-half in fee simple under § 4421 of Pope's Digest; Third, Is she not estopped and barred by her conduct and by law from claiming dower at this time?

Discussing first the third question raised, it may be said that the widow, if entitled to dower, is not estopped from claiming it now through failure to claim it when the conveyance to her from her husband was uncovered. She could not have claimed dower then, for her husband was alive, and it could not be then known that she would survive him. The purchaser at the execution sale bought subject to the rule *caveat emptor,* and took only such title as the judgment debtor owned. *Pate* v. *Peace,* 182 Ark. 618, 32 S. W. 2d 621; *Citizens Bank & Trust Co.* v. *Garrott,* 192 Ark. 599, 93 S. W. 2d 319.

The other two questions will be considered together. One of the cases relied upon for the reversal of the

decree is that of *Murphy* v. *Booker,* 139 Ark. 469, 214 S. W. 63. In this case the wife of Booker was denied dower, because her husband, who had lost his title, was not thereafter seized of an estate of inheritance, and it was said that to give a right of dower there must be such a right of immediate possession on the part of the husband as to constitute seizin in law. That opinion quotes from the case of *Tate* v. *Jay,* 31 Ark. 576, as follows: " 'Seizin is either in deed, or in law; seizin in deed, is actual possession; seizin in law, the right to immediate possession. Unless such seizin existed during coverture there can be no dower, because it is an indispensable requisite to her right to dower, so declared by statute.' " It will be observed that the indispensable requisite is that "seizin existed during coverture."

Another case cited in the brief of appellant and strongly urged in our consultation as requiring the reversal of the decree here appealed from is that of *McGuire* v. *Cook,* 98 Ark. 118, 135 S. W. 840, Ann. Cas. 1912D, 776. The facts in that case, as stated in the opinion, are as follows: Mrs. Ewing survived her first husband, Thomas Cox, and dower was assigned to her in his estate. The lands thus assigned her were sold by the administrator of Cox's estate to pay his debts. D. C. Ewing became the purchaser at this sale, and upon confirmation thereof received an administrator's deed. Mrs. Cox was also widow of Ewing at the time of Ewing's death, and claimed dower in his reversionary interest in the lands which she held as dower. Ewing had never had seizin of these lands, for the reason that the possession and the right thereto was in Mrs. Ewing as the dowager of her former husband. It is true Ewing and wife occupied these dower lands during their marriage as their homestead, but this possession was referable to the dower interest of Mrs. Ewing as the widow of Cox. It was she who had possession and the right thereto. Ewing had purchased only the reversionary interest, and his right of possession was postponed until the termination of his wife's dower interest in the estate of her former husband. The claim of Mrs. Ewing to dower in those lands

was disallowed for the reason that Ewing only had a reversionary interest in the lands. His right to occupy the lands as owner was postponed until the death of his wife, and she survived him, so that never during his lifetime was he seized of the lands. In so holding Judge FRAUENTHAL said: "The same character of seizin that was required by the common law in the husband is required by our statute in order to entitle the widow to dower" . . . "The statute in this state, on the other hand, provides that the widow 'shall be endowed in fee simple' of a portion of the real estate, and also expressly limits same to the real estate 'of which the husband shall die seized.' " Ewing was not only not seized of these lands at the time of his death, but he was never seized of them during his life. His wife could not, therefore, have dower. The point decided in that case was that the wife was not entitled to dower in the reversionary estate of her husband, for the reason that he was not seized thereof.

The question there involved was not alone that of the character or extent of Mrs. Ewing's dower in the estate of Ewing, but was whether she had any dower in that estate. It was held that she had no dower interest, for the reason that "During all the time he (Ewing) owned the reversionary interest, there was the interposition of a life estate which prevented that necessary seizin to entitle his widow to a dower therein. He did not die seized of the land, and his widow was not entitled for that reason to one-half thereof in fee." The dower there claimed was a one-half interest in fee, as the reversionary interest of Dr. Ewing was a new acquisition, and he left no descendants, and there were no creditors. For the reason stated, Mrs. Ewing was not entitled to any estate as dower, as Ewing had never been seized.

It was there contended that, while seizin was essential under what is now § 4396, Pope's Digest, it was not essential under act of March 24, 1891 (§ 2709, Kirby's Digest), which now appears as § 4421, Pope's Digest. The opinion says: "It is claimed that under the provisions of that (§ 4396, Pope's Digest) the widow is entitled

to dower only in 'lands whereof the husband was seized of an estate of inheritance at any time during marriage'; and the dower thus given is an estate only for life and of one-third; while under the provisions of § 2709 (§ 4421, Pope's Digest) the widow is given one-half of his 'real estate.' It is contended that the term 'real estate,' as thus used in the latter section, is more comprehensive than the expression 'lands whereof the husband was seized of an estate of inheritance,' and includes every interest in land which the husband owned at the time of his death, and that it was the intention of the Legislature by this latter enactment not to create the technical common-law estate of dower, but to provide for the devolution and division of the entire real property owned by the decedent at the time of his death." After referring to certain cases from other jurisdictions cited in support of that contention the opinion proceeds: "But we think the statutes of those states are quite dissimilar from our statute on this question. Those statutes either provide that the widow shall take a certain proportion of the deceased husband's land, without any qualification, or of such land of which the husband died possessed in his own right. The statute in this state, on the other hand, provides that the widow 'shall be endowed in fee simple' of a portion of the real estate, and also expressly limits same to the real estate 'of which the husband shall die seized.' We think that under these express provisions it was manifestly intended that the requisites necessary to constitute dower at common law were also necessary to constitute the estate created by this statute." After quoting from the opinion in the case of *Tate* v. *Jay, supra,* as did the opinion in *Murphy* v. *Booker, supra,* Justice FRAUENTHAL proceeded to say: "Likewise, we think that seizin of the husband is a necessary requisite under § 2709 of Kirby's Digest to entitle the widow to the dower therein provided, because it is so declared by that statute, which says that she shall be endowed of a certain portion of the real estate 'of which the husband shall die seized.'" The point discussed and the point decided was that § 4421, Pope's Digest had not changed the requirement that seizin was essential to dower.

There is nothing in this opinion to impair the authority of the case of *Tate* v. *Jay, supra*. Indeed, the opinion quotes with approval from that case, in which case it. was said: ''Her right to dower after marriage is absolute, and fixes a lien upon all the lands of which the husband was seized of an estate of inheritance, no subsequent act of his, without her consent, can divest her of it. It is a freehold estate, growing out of marriage, seizin and the death of the husband. It takes by way of lien created by and at the time of marriage, and, when once fixed, is paramount to the claim of creditors and purchasers, without regard to the husband's debts. (Citing cases.)''

The authority most frequently quoted on questions relating to dower is Scribner, and that author says (Vol. 1, Scribner on Dower, 2d Edition, p. 603): ''After the right of dower has once attached, it is not in the power of the husband alone to defeat it by any act in the nature of an alienation or charge. It is a right attaching in law, which, although it may possibly never become absolute, (as if the wife die in the lifetime of the husband), yet, from the moment that the facts of marriage and seizin concur, it is so fixed on the land as to become a title paramount to that of any person claiming under the husband by subsequent act. The alienation of the husband, whether voluntary, as by deed or will; or involuntary, as by bankruptcy or otherwise, will confer no title on the alienee as against the wife in respect of her dower, but she will be entitled to recover against such alienee, (except as to damages), in the same manner, as she would have recovered against the heir of the husband, had the latter died seized.''

It would hardly be contended that Mrs. Beal did not have a dower interest but for the act of 1891, which appears as § 4421, Pope's Digest. Does that enactment deprive a widow of a dower interest in the land sold under an execution levied upon it as the property of her husband?

To answer this question it is essential that we consider what the law was when the act of 1891 was passed.

There was approved February 28, 1838, a general statute on dower, which appears as Chapter 52 of the Revised Statutes under the title "Dower." There have been comparatively few amendments of this chapter. Section 1 of this chapter appears as § 4396, Pope's Digest. Section 16 appears as § 4413, Pope's Digest. Section 28 appears as § 4429, Pope's Digest. These sections have never been amended.

Section 1 provides that "A widow shall be endowed of a third part of all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage, unless the same shall have been relinquished in legal form."

Section 28 reads as follows: "A widow shall be endowed of lands sold in the lifetime of the husband without her consent in legal form against all creditors of the estate."

Section 16 reads as follows: "No act, deed or conveyance, executed or performed by the husband without the assent of his wife, evinced by the acknowledgment thereof in the manner required by law, shall pass the estate of a married woman; and no judgment or decree confessed or recovered against him, and no laches, default, covin or crime of the husband shall prejudice the right of his wife to her dower or jointure, or preclude her from the recovery thereof, if otherwise entitled thereto."

There has never been any amendment of this § 16, and if it is still the law, as we think it is, the wife's right of dower is not barred by any judgment against the husband or any proceedings thereunder.

Section 20 of chapter 52 of the Revised Statutes provided for dower in the slaves owned by the husband and in his personal property, which need not be considered, as this case involves only the question of dower in lands.

Section 21 of this chapter 52 relates to dower in real estate. This section appeared as § 2592 of Mansfield's Digest, and it was this section of Mansfield's Digest which was amended by the act of March 24, 1891 (Acts

1891, page 116), and which, as thus amended, appears as § 4421, Pope's Digest.

This section 2592, Mansfield's Digest, is copied, with the amendments of 1891 inclosed in parentheses so that it may readily appear what changes were effected by this amendatory act: "If a husband die, leaving a widow and no children, such widow shall be endowed (in fee simple) of one-half of the real estate of which such husband died seized (where said estate is a new acquisition and not an ancestral estate) and one-half of the personal estate, absolutely and in her own right, (as against collateral heirs; but, as against creditors, she shall be endowed with one-third of the real estate in fee simple if a new acquisition and not ancestral, and of one-third of the personal property absolutely, Provided, if the real estate of the husband be an ancestral estate she shall be endowed in a life estate of one-half of said estate as against collateral heirs, and one-third as against creditors.)"

It will be observed that § 21 defines the interest given the wife in the real estate "of which such husband died seized," and that the amendatory act of 1891 uses the identical language in defining the wife's dower interest in the real estate "of which such husband died seized." The phrase, "of which such husband died seized," means in one enactment just what it does in the other. This amendatory act of 1891 changes the interest which the wife takes as dower, but in the amendatory act, as well as in the original act, she has dower (whatever it may be) in the real estate "of which such husband died seized."

. There is manifested no intention in the act of 1891 to amend any section of the Dower Statute except § 21, which became § 2592 of Mansfield's Digest, and the amended act gave the wife dower in the real estate "of which such husband died seized," as did the original act which it amended. This amendatory act was intended only to define what the dower right should be in the real estate "of which such husband died seized" under the different conditions there enumerated, and did not amend, repeal or in any manner impair § 16 of chapter

52 of the Revised Statutes, appearing as § 4413 of Pope's Digest. If this section of the Digest is still the law, as we think it is, then, to paraphrase it, "No act, deed or conveyance, executed or performed by the husband without the assent of his wife, which assent must be evinced by the acknowledgment of the wife in the manner required by law, shall pass her dower interest; and no judgment or decree confessed or recovered against him, and no laches, default, fraud or crime on his part shall prejudice the right of the wife to her dower or preclude her from the recovery thereof, if otherwise entitled thereto."

If this section is still the law, and means what it plainly says, the sale of Beal's land under the execution against him did not and does not operate to defeat the claim of his widow to her dower interest therein.

The act of 1891 (§ 4421, Pope's Digest) defines that interest where the land is a new acquisition, and also where it is an ancestral estate; in cases where there are children, and in other cases where there are no children, and in cases where there are creditors, and in other cases where there are no creditors; but in no case is it provided that she shall not be endowed of some interest as dower. She has that interest (whatever it may be, depending upon the contingencies named) in real estate of which her husband died seized, which, so far as the wife's dower is concerned, includes "lands sold in the lifetime of the husband without her consent in legal form against all creditors of the estate." Section 4429, Pope's Digest.

In the case of *Bowers* v. *Hutchinson*, 67 Ark. 15, 53 S. W. 399, Hutchinson and his wife entered into a separation agreement, whereby, in consideration of certain sums of money paid and to be paid the wife, she contracted to release all claim for dower in her husband's estate. In holding invalid this agreement, which was in form a deed, Judge BATTLE said: "The deed which constituted the defense in this action was without effect as a relinquishment of dower in real estate. The statutes of this state provide that a widow shall have dower in 'all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage, unless the

same shall have been relinquished in legal form.' To relinquish her dower in any land of her husband the statutes require her to join in the conveyance thereof, and to voluntarily appear before a proper court or officer, and, in the absence of her husband, declare that she had of her own free will signed the relinquishment of dower for the purposes contained and set forth in the conveyance, without compulsion or undue influence of her husband. Under these statutes this court has repeatedly held that 'a married woman can relinquish dower only by joining with her husband in a deed of conveyance to a third person.' *Pillow* v. *Wade*, 31 Ark. 678; *Witter* v. *Biscoe*, 13 Ark. [422] 423; *Stidham* v. *Matthews*, 29 Ark. 659; *Countz* v. *Markling*, 30 Ark. 17; *Smith* v. *Howell*, 53 Ark. 279, 13 S. W. 929.''

In the case of *Fourche River Lumber Co.* v. *Walker*, 96 Ark. 540, 132 S. W. 451, it was held that the widow of a deceased mortgagor is not barred of dower in the mortgaged lands by a decree of foreclosure and sale thereunder, though she was a party to the suit, unless her right to dower was directly put in issue.

It was generally recognized that, through execution sales, mortgage foreclosures, and conveyances by the husband in which the wife had not joined, and otherwise, there were many tracts of land in which the wife had inchoate rights of dower, which were in possession of others, but whose possession could not ripen into perfect title because the wife's dower had not been relinquished in the manner provided by law. This condition no doubt led to the enactment of act 315 of the Acts of 1923, barring the inchoate right of dower where the husband had been barred of his title for fifteen years, or more, which period of time was shortened by act 84 of the Acts of 1935 to seven years (§ 8919, Pope's Digest).

Here, the widow has done no act which divests her of her dower, and seven years have not expired since the death of her husband.

We conclude, therefore, that the widow was properly allowed dower in the lands of her husband sold under the execution against him, and as the lands were a new

acquisition, and there were no children or creditors, she was entitled, under § 4421, Pope's Digest, to be endowed in fee simple of one-half of the real estate sold at the execution sale. This was the decree of the court below, and it is, therefore, affirmed.

MEHAFFY and DONHAM, JJ., dissent.