GAMBLE *v.* JOHNSON.

5-8                                     256 S. W. 2d 46

Opinion delivered March 23, 1953.

*Jackie L. Shropshire* and *J. R. Booker,* for appellant.

*Talley & Owen* and *John P. Streepey,* for appellee.

Ed. F. McFaddin, Justice. Appellees, Johnson and wife, brought suit to quiet title to the land here involved; and the appellants (heirs of J. N. Peters) resisted the suit. From a decree quieting appellees' title, there is this appeal.

In 1932, J. N. Peters owned the 40 acre tract herein called "the land." E. S. Jones sought to foreclose a mortgage Peters had given him on the land; and, in order to get money to pay the Jones debt and also a debt to Howard Billing, Peters executed, acknowledged and delivered to Howard Billing an instrument in all respects a warranty deed, except that, after the description of the land, there was this language:

"It is understood and agreed that if the said J. N. Peters pays back the said Five Hundred Fifteen and 66/100 Dollars, with all taxes that become due on said land and interest at 8% from this date, within two years from this date, this deed shall become null and void; otherwise to remain in full force and effect."

This instrument was dated August 16, 1932, and duly recorded the same day. Peters continued to live on the land until Billing sold it to Warren in 1938, at which time Billing gave Peters $200 in cash and considered the aforementioned debt of $515.66 to be cancelled. Peters then moved off the land and never made any claim to it

thereafter, although he continued to live in the same community until his death in 1950.

Warren and wife purchased the land from Billing in 1938, fenced it, improved it and exercised full ownership. In 1949, Mrs. Warren, as survivor by the entirety of the Warren title, conveyed the land to Johnson and wife (the present appellees) by general warranty deed. The Johnsons made extensive improvements and exercised full ownership and their title was never questioned. In 1951, when Johnson was preparing to sell the land, someone questioned the Peters- Billing instrument, and Johnson brought this suit to quiet his title against the appellants who are the heirs of J. N. Peters.

The appellants, in resisting the suit, claimed: (a) that the 1932 instrument from Peters to Billing was a mortgage, rather than a deed; (b) that Billing became mortgagee in possession; and (c) that Warren and Johnson, as grantees holding under Billing, likewise are mortgagees in possession. On these claims appellants seek to recover the land, relying on such cases as *Lesser* v. *Reeves,* 142 Ark. 320, 219 S. W. 15, and *Green* v. *Gilbert,* 169 Ark. 537, 276 S. W. 8.

Even assuming that the 1932 instrument from Peters to Billing was a mortgage, nevertheless the appellants cannot prevail in this suit: because Billing did not take the land from Peters as a mortgagee in possession; rather Billing acquired *the title* from Peters. When Peters surrendered possession, Billing paid him $200 in cash for the land in addition to considering as cancelled the $515.66 and interest and taxes. It is shown that the $200 was a fair payment for the Peters equity within the rule of *Green* v. *Gilbert, supra.* It is true that Billing received no written conveyance from Peters in 1938 when the $200 was paid and Peters delivered possession of the premises to Billing; but title to real estate can pass—as it did in this case—with possession, even in the absence of a written instrument.

In *McKenzie* v. *Rumph*,[1] 171 Ark. 791, 286 S. W. 1022, Mrs. E. M. Neeley held a vendor's lien on certain land which J. T. Neeley had purchased from her. When J. T. Neeley was unable to pay the balance of the purchase price, he orally agreed to surrender possession and reconvey the land in satisfaction of the balance due. He did actually surrender possession, but died without making a written conveyance. Years later it was claimed that the title of J. T. Neeley had not been extinguished. In holding that J. T. Neeley's title rights had been extinguished, we said:

"The statute of frauds is pleaded to defeat this reconveyance. But we think the statute was met by the actual surrender of possession under the parol agreement to reconvey. That agreement was fully consummated by the surrender of possession, and the conveyance was therefore valid. *Phillips* v. *Jones*, 79 Ark. 100, 95 S. W. 164; *Bostleman* v. *Henkel*, 152 Ark. 628, 239 S. W. 30; *Freer* v. *Less*, 159 Ark. 509, 252 S. W. 354."

Likewise in *Riley* v. *Atherton*, 185 Ark. 425, 47 S. W. 2d 568, the mortgagor delivered the property to the mortgagee in satisfaction of the debt, and it was entirely oral. Even though we held the evidence in that case to be insufficient, nevertheless we recognized the rule of the validity of such parol transfer by using this language:

"It is not claimed that there was any written agreement between appellees and the bank by which a delivery of the property to the bank was accepted in satisfaction of the mortgage debt, and it is conceded that such an agreement could rest in parol. This court has so held with reference to chattel mortgage indebtedness. *Fincher* v. *Bennett*, 94 Ark. 165, 126 S. W. 392; *Horton* v. *Thompson*, 124 Ark. 545, 187 S. W. 627; *Ribelin* v. *Loyd*, 148 Ark. 487, 230 S. W. 556. The reason for the rule is, as stated in the case last cited, that 'a mortgage is a mere security for a debt, and the property may be released from the mortgage by parol agreement, as well as by a

[1] This case is cited in an Annotation on "Oral Land Contract," in 101 A. L. R. 1003.

written one.' In this and in many other States a mortgage is considered security for the debt merely, and not the principal obligation. An oral agreement to satisfy therefore does not fall within the statute of frauds.''

Earlier cases likewise recognized that the mortgagor could transfer the land to the mortgagee in satisfaction of the debt by delivering possession under an agreement. To such effect is *Garretson* v. *White,* 69 Ark. 603, 65 S. W. 115. See, also, 37 Am. Jur. 412 *et seq.* We have frequently held that a Court of equity will decree specific performance of a verbal contract for sale of land when purchaser has entered into possession and paid the agreed consideration. See *Webb* v. *Marlar,* 83 Ark. 340, 104 S. W. 144; *Kellums* v. *Richardson,* 21 Ark. 137.

Thus we hold that Billing did not become a mortgagee in possession, but became the purchaser of Peters' title when he paid Peters the $200 and took possession of the land in 1938; and that appellees, as grantees from the Billing title, should have their title quieted.

Another reason for holding against the appellants is because of the laches of their ancestor, J. N. Peters. He surrendered possession of the land and accepted the payment of the money from Billing, as aforesaid. Peters then continued to live in the same locality from 1939 until his death in 1950. He knew that Warren and Johnson were each occupying and improving the property, yet he never made any claim of any kind. He therefore was guilty of laches and was barred by estoppel. But there is no necessity to develop further the matter of laches, since the other ground as previously developed, disposes of appellants' case.

Affirmed.